WAYNE J. McMILLAN, PLAINTIFF v. STATE FARM FIRE AND CASUALTY COMPANY AND STATE FARM GENERAL INSURANCE COMPANY, DEFENDANTS

No. 8816SC919

(Filed 16 May 1989)

1. **Insurance § 131.1 — fire insurance — standard appraisal provisions — binding**

The trial court properly granted summary judgment for defendants in an action arising from a fire insurance claim where plaintiff's contract with defendants clearly provided that in the event they failed to agree upon the amount of loss, either party could demand that the amount of the loss be set by appraisal; this procedure was properly followed as detailed in the contract; and there was no evidence of fraud, mistake, duress or other impeaching circumstances in the ap-

McMILLAN v. STATE FARM FIRE AND CASUALTY CO.

[93 N.C. App. 748 (1989)]

praisal process and award. Plaintiff was bound by the terms of his contract and the appraisal provisions were not revocable at will.

2. **Damages § 11.1— refusal to settle fire insurance claim—not aggravated conduct—punitive damages properly dismissed**

The trial court did not err in an action arising from a fire insurance claim by dismissing plaintiff's claim for recovery of punitive damages based upon defendant's alleged bad faith in refusing to settle the claim where defendant's purportedly unreasonable actions did not rise to the level of aggravated conduct.

3. **Insurance § 131.1— fire insurance contracts—mandatory appraisal clause—constitutionality—not raised at trial**

Plaintiff's challenge to the constitutionality of the statutory provision which requires the inclusion of an appraisal clause in all fire insurance contracts in North Carolina was not raised at trial and was not properly before the Court of Appeals. N.C.G.S. § 58-176 (1982).

APPEAL by plaintiff from *Ellis, Craig B., Judge.* Judgment entered 20 April 1988 in ROBESON County Superior Court. Heard in the Court of Appeals 10 April 1989.

Plaintiff's home was damaged by fire on 15 December 1985. Defendants were plaintiff's fire insurers, and one of their agents on 2 January 1986 offered to settle the damage to the residence for $12,354.97. Plaintiff responded by submitting an appraisal and building estimate indicating that the total amount of loss was at least $69,936.50.

Defendants demanded an appraisal pursuant to the terms of the policy, relevant portions of which appear as follows:

5. Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where

McMILLAN v. STATE FARM FIRE AND CASUALTY CO.

[93 N.C. App. 748 (1989)]

the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

Defendants appointed William Cutler and plaintiff appointed Lee Werner, who was subsequently replaced by Thomas Hatchell, as appraisers. The Honorable E. Lynn Johnson appointed Greve Grinnell to act as umpire. Defendants' attorney wrote to all parties concerned on 21 May 1986 that "State Farm is guaranteeing the payment of Mr. Grinnell's fee in acting as an umpire and will deduct one-half of such from any payment to Wayne J. McMillan and Attorney Cabell Regan once the claim has been resolved."

The appraisers failed to agree on the amount of loss and submitted documentation of their evaluations by 30 June 1986 to umpire Grinnell. Plaintiff's appraiser estimated the loss to the dwelling at $69,936.00 and to the personal property at $25,000.00. Defendants' appraiser, however, estimated the loss to the dwelling at $21,062.47 and to the personal property at $1,719.80. On 15 July 1986 the three met to review the opinions of both appraisers, after which the umpire and defendants' appraiser signed an agreement as to the amount of the fire loss damage. The amount of the loss involving dwelling damages was set at $27,252.69, and the actual cost to repair was set at $29,466.10. The amount of personal property loss was set at $5,649.30.

Defendants issued checks to plaintiff on 31 July 1986 in the amounts of $27,252.69 and $5,649.30, which plaintiff returned on 5 June 1987. Plaintiff did not pay his portion of the umpire's fee, and defendants eventually paid the entire amount of $550.00. Plaintiff filed suit on the policy on 23 June 1987, and defendants filed a counterclaim seeking to recover one-half of the umpire's fee. The trial court denied plaintiff's motion to vacate the appraisal award and for summary judgment, granted defendants' motion for summary judgment, and entered judgment for defendants in the amount of $275.00.

*Murray, Regan and Regan, by Cabell J. Regan, for plaintiff-appellant.*

*Anderson, Broadfoot, Johnson & Pittman, by John H. Anderson, II, for defendant-appellees.*

WELLS, Judge.

[1]  Plaintiff contends that the appraisal provisions of the standard fire insurance policy do not operate to establish a final and binding determination of the amount of loss. Rather, he argues that the appraisal provisions are not binding upon the parties but are revocable at will, and that because any award calculated pursuant to them is not final and binding, there remains a genuine issue of fact as to the amount of loss. He contends that the trial court erred in granting summary judgment for defendants based upon the appraisal award.

In evaluating this argument we emphasize, however, that plaintiff's contract with defendants clearly provided that in the event they failed to agree upon the amount of loss, either party could "demand that the amount of the loss be set by appraisal." The agreement further provided that "[i]f the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three *shall set the amount of the loss.*" (Emphasis added.) Defendants' forecast of evidence showed that the contractual provisions for appraisal were followed.

In *Young v. New York Underwriters Insurance Co.,* 207 N.C. 188, 176 S.E. 271 (1934), the North Carolina Supreme Court addressed a similar issue arising out of a fire insurance contract that also provided for appraisal to establish the amount of loss. The Court stated that "[t]he parties entered into a valid and definite written agreement for submission of the controversy to appraisers. . . . The appraisers and the umpire [complied with the contractual procedure and] signed and delivered an award. . . . Such award so made is presumed to be valid. . . . Consequently, such award must stand, unless there is evidence of fraud, mistake, duress, or other impeaching circumstance."

We hold that plaintiff was bound by the terms of his contract with defendants, which clearly established the procedure for determining the amount of loss when in dispute. The forecast of evidence

indicates that this procedure was properly followed as detailed in the contract; the awards, therefore, were final and binding.

There being no evidence of fraud, mistake, duress or other impeaching circumstances in the appraisal process and award, the trial court properly granted summary judgment for defendants.

[2] Plaintiff also argues that the trial court erred in dismissing his claim for recovery of punitive damages based upon defendants' alleged bad faith. Relying on *Dailey v. Integon General Insurance Corp.*, 75 N.C. App. 387, 331 S.E. 2d 148, *disc. rev. denied*, 314 N.C. 664, 336 S.E. 2d 399 (1985), plaintiff contends that defendants' tortious bad faith refusal to settle the claim entitled him to punitive damages. This Court made clear in *Dailey* that tortious conduct in connection with a breach of contract must " 'partake of some element of aggravation before punitive damages will be allowed.' " *Id. (quoting Newton v. Standard Fire Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976) ).

In support of this argument plaintiff asserts that defendants failed to conduct a reasonable investigation before demanding appraisal, and that their settlement offer was unreasonably low. Plaintiff also characterizes defendants' action in initiating the appraisal process when he had been without the use of his home for approximately two months as unreasonable, given their duty to relieve the financial distress of their insured. *See Dailey, supra.* These examples of purportedly unreasonable actions do not rise to the level of aggravated conduct, such as were found in *Dailey, supra.*

[3] In his brief, plaintiff attempts to challenge the constitutionality of the statutory provision which requires the inclusion of the appraisal clause in all fire insurance contracts in North Carolina. *See* N.C. Gen. Stat. § 58-176 (1982). As plaintiff points out, the required appraisal clause makes no provision for hearing or the taking of evidence, and provides no rules for the role of the appraisers. While we agree that the required appraisal clause carried with it serious due process implications, plaintiff did not raise the constitutional issue or argument at trial, but instead attempted to rely on the provisions of the North Carolina Uniform Arbitration Act which require notice and hearing. *See* N.C. Gen. Stat. §§ 1-567.6 and 1-567.7 (1983). Under these circumstances, plaintiff's constitutional arguments are not properly before us. *See Commissioner of Insurance v. North Carolina Rate Bureau*, 300 N.C. 381, 269 S.E. 2d 547 (1980) and cases cited therein; *Ratcliff v. County of*

*Buncombe*, 81 N.C. App. 153, 343 S.E. 2d 601, *appeal dismissed*, 318 N.C. 417, 349 S.E. 2d 599 (1986).

We have considered plaintiff's remaining assignments of error, find them to be without merit, and overrule them.

Affirmed.

Chief Judge HEDRICK and Judge EAGLES concur.