HARLEYSVILLE MUTUAL INSURANCE COMPANY, PLAINTIFF v.
J. CLAYTON NARRON, AND WIFE PAULA NARRON, DEFENDANTS

No. COA02-137

(Filed 31 December 2002)

**1. Appeal and Error—appealability—partial summary judgment—writ of certiorari**

There was no need to determine whether a substantial right was affected by a partial summary judgment where the Court of Appeals had issued a writ of certiorari.

**2. Insurance—disputed appraisal of damage—jurisdiction to modify—no existing civil action**

The trial court did not err by granting summary judgment for defendants in a declaratory judgment action brought by an insurance company arising from a disputed appraisal of hurricane damage. Although plaintiff-insurer contended that the court had jurisdiction to confirm, modify or vacate the award pursuant to the Uniform Arbitration Act, this appraisal was not part of an arbitration proceeding in an existing civil action, but a process invoked by the parties via the policy to resolve a dispute over the amount of the loss.

HARLEYSVILLE MUT. INS. CO. v. NARRON

[155 N.C. App. 362 (2002)]

**3. Declaratory Judgments—claim to determine amount of insurance loss—not an interpretation of policy—improper claim**

A claim involving a disputed damage appraisal under an insurance policy was not properly brought pursuant to the Declaratory Relief Act where plaintiff-insurer did not request an interpretation of the appraisal provision, but filed a complaint asking that the court set the amount of the loss while an appraisal proceeding was pending.

**4. Insurance—appraisal umpire—ex parte meeting—not impeaching circumstance**

Plaintiff-insurer did not show that ex parte communications with an appraisal umpire constituted an impeaching circumstance requiring that the award be overturned where there was no evidence of fraud or conniving, the umpire met with both appraisers three times, the appraisers could not agree on an amount, plaintiff's appraiser did not provide the umpire with supporting documentation, the umpire did not believe he needed anything else from plaintiff, the umpire's figures were closer to those of defendant's appraiser, and the umpire orally discussed a final amount with that appraiser.

**5. Insurance—appraisal of damage—mistake—award not invalid**

There was no need to invalidate a hurricane damage appraisal award based on the inclusion of non-hurricane damage; mistakes by appraisers are not sufficient to invalidate an award fairly and honestly made.

**6. Insurance—appraisal—award attacked through other policy provisions**

Where the parties to an insurance dispute proceeded with an appraisal which resulted in a binding determination of loss, plaintiff-insurer could not contend that other provisions in the contract invalidated the resulting award.

**7. Appeal and Error—mootness—sanctions—notice of appeal struck—certiorari granted**

Appellate arguments about whether the trial court had jurisdiction to strike a notice of appeal as a Rule 11 sanction were moot where the Court of Appeals granted a writ of certiorari.

HARLEYSVILLE MUT. INS. CO. v. NARRON

[155 N.C. App. 362 (2002)]

Appeal by plaintiff from orders entered 18 September 2001, 27 September 2001 and 16 November 2001 by Judge Knox V. Jenkins, Jr., in Johnston County Superior Court. Heard in the Court of Appeals 9 October 2002.

*Cranfill, Sumner & Hartzog, LLP, by William W. Pollock, for plaintiff-appellant.*

*Armstrong & Armstrong, PA, by L. Lamar Armstrong, Jr., and Thomas S. Berkau, for defendants-appellees.*

BRYANT, Judge.

Plaintiff insurer, Harleysville Mutual Insurance Company, appeals from orders granting defendants insureds' motions for: 1) partial summary judgment for failure to state a claim upon which declaratory judgment may be granted; 2) summary judgment for breach of contract; and 3) Rule 11 sanctions.

Plaintiff provided homeowner's insurance to defendants, Clayton and Paula Narron. On 15 September 1999, Hurricane Floyd blew a large tree onto defendants' Johnston County home, causing substantial damage. By mid-December 1999, defendants were unable to settle their claim with plaintiff and requested that the dispute be settled according to the appraisal provision set out in their insurance policy [the policy].

The appraisal provision stated in pertinent part:

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. *A decision agreed to by any two will set the amount of loss.*

(emphasis added.). The policy also contained a provision for "Loss Payment," which stated:

*We will adjust all losses with you.* We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a.  Reach an agreement with you;

    b.  There is an entry of a final judgment; or

    c.  *There is a filing of an appraisal award with us.*

(emphasis added.).

In February 2000, the appraisal process began and proceeded according to the policy. On 18 July 2000, the day the appraisers' documentation was due to the umpire, plaintiff filed a complaint for a declaratory judgment, seeking a declaration that the replacement cost value of the damage to defendants' home was $155,313.16 and the actual cash value was $107,854.44, and that the appraisal process was subject to impeachment. Defendants moved to dismiss, answered plaintiff's allegations and filed counterclaims for breach of contract and unfair and deceptive trade practices.

After three meetings with the umpire, the appraisers were unable to agree on the replacement cost value. Determining that the estimate of defendants' appraiser was closest to his own, the umpire then met with only defendants' appraiser. Thereafter, the umpire issued an appraisal award, signed also by defendants' appraiser, setting the amount of loss.

By consent order, plaintiff amended its complaint to include allegations that the appraisal award was secured by fraud or undue means. Defendants filed a motion for partial summary judgment on plaintiff's declaratory judgment action and their breach of contract counterclaim. On 23 August 2001, the trial court granted partial summary judgment in defendants' favor as to plaintiff's declaratory judgment complaint. The trial court found, however, that defendants' breach of contract counterclaim could not be adjudicated in the declaratory judgment action. Therefore, the court retained jurisdiction over the breach of contract claim and treated the allegations in plaintiff's complaint as affirmative defenses to that claim.

On 27 September 2001, the trial court issued an order granting summary judgment in favor of defendants based upon their breach of contract claim. On 19 October 2001, plaintiff appealed both the partial summary judgment of their declaratory relief action and the

partial summary judgment adjudicating defendants' breach of contract claim.

On 30 October 2001, defendants moved the trial court for Rule 11 sanctions, alleging that plaintiff violated its agreement to re-calendar the case for trial, and that this was done as a tactic to delay the trial. On 16 November 2001, the trial court issued an order imposing sanctions for Rule 11 violations, striking plaintiff's notice of appeal.

On 21 November 2001, plaintiff filed verified petitions to this Court seeking a writ of supersedeas and a writ of certiorari, arguing that the trial court had no jurisdiction to impose sanctions for filing a notice of appeal. Pursuant thereto, this Court granted both a writ of supersedeas and a writ of certiorari.

Plaintiff presents four assignments of error on appeal: whether the trial court erred in I) concluding that it lacked subject matter jurisdiction over plaintiff's declaratory judgment action and that plaintiff failed to state a claim for declaratory relief; II) in granting defendants' relief on the breach of contract claim where there remained issues of material fact; and III) striking plaintiff's notice of appeal without jurisdiction to do so. We disagree and affirm the orders of the trial court.

[1] Preliminarily, we note that plaintiff argues on appeal that a substantial right is affected, thus allowing appellate review of the trial court's interlocutory orders. Plaintiff forgets, however, that this Court has issued a writ of certiorari to address the merits of the appeal. *See* N.C.R. App. P. 21(a)(1). Therefore, we need not determine whether the trial court's order affects a substantial right but will address the appeal on its merits.

## I.

[2] We will first address plaintiff's argument that the trial court erred in granting partial summary judgment as to its declaratory judgment claim.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001). In ruling on a motion for summary judgment, the trial court is required to view the evidence in the

light most favorable to the non-moving party. *Wrenn v. Byrd*, 120 N.C. App. 761, 763, 464 S.E.2d 89, 90 (1995).

It is well-established in North Carolina that where "contractual appraisal provisions are followed, an appraisal award is presumed valid and is binding absent evidence of fraud, duress, or other impeaching circumstances." *Enzor v. N.C. Farm Bureau Mut. Ins. Co.*, 123 N.C. App. 544, 545-46, 473 S.E.2d 638, 639 (1996); *see also N.C. Farm Bureau v. Harrell*, 148 N.C. App. 183, 185, 557 S.E.2d 580, 581 (2001), *disc. review denied*, 356 N.C. 165, 568 S.E.2d 606 (2002); *McMillan v. State Farm Fire and Casualty Co.*, 93 N.C. App. 748, 751-52, 379 S.E.2d 88, 90 (1989).

Plaintiff contends that either party to an appraisal process may bring an action to confirm, modify or vacate an appraisal award, and that a declaratory judgment action is the appropriate method in which to do so. Therefore, according to plaintiff, the trial court retained jurisdiction to adjudicate its declaratory judgment action, and, furthermore, it stated a claim as to the same. We disagree.

In support of its argument, plaintiff cites *Hooper v. Allstate Ins. Co.*, 124 N.C. App. 185, 476 S.E.2d 380 (1996). However, we find *Hooper* distinguishable from the present case. In *Hooper*, the insureds, whose property suffered fire damage, filed an action against their homeowner's insurance company. *Id.* at 185, 476 S.E.2d at 381. Following the filing of a "Tender of Judgment" by the insurer, the *Hooper* plaintiffs filed motions to strike and for arbitration. *Id.* As part and parcel of arbitration, the parties began the appraisal process, which was governed by an appraisal clause in the homeowner's insurance policy. *Id.* Following the appraisal process, the insureds filed a motion for order setting loss. *Id.* at 186, 476 S.E.2d at 381. The trial court denied the motion and the insureds appealed.

The *Hooper* Court first noted that the insured's "motion to set the loss . . . was in reality a request for confirmation of the appraisers' report . . . ." *Id.* at 188, 476 S.E.2d at 382. The Count noted that "[w]hile a *final arbitration award* is not properly before us for review . . . , '[j]udicial review of an arbitration award is limited to the determination of whether there exists one of the specific grounds for vacating the award under the arbitration statute.' " *Id.* at 189, 476 S.E.2d at 382-83 (quoting *Sentry Building Systems v. Onslow County Bd. of Education*, 116 N.C. App. 442, 443, 448 S.E.2d 145, 146 (1994)). The Court applied the Uniform Arbitration Act (UAA) in determining that the trial court had three options in reviewing an arbitration

award: 1) to confirm; 2) to vacate; or 3) to modify or correct. *Id.* at 186, 476 S.E.2d at 381. Based upon the trial court's failure to exercise any of these options, the *Hooper* Court vacated the trial court's order and remanded the case. *Id.* at 189, 476 S.E.2d at 383.

Unlike the appraisal process in *Hooper*, the appraisal in the present case was not part and parcel of an arbitration proceeding in an existing civil action where, under the UAA, the trial court had the authority to confirm, vacate, or modify an appraisal award. Rather, the parties here invoked the appraisal process via the policy to resolve a dispute over the amount of loss, as opposed to first invoking the jurisdiction of the court in a civil action.

In fact, this Court has recognized that appraisal provisions are analogous to arbitrations, in that they provide a "mechanism whereby the parties can rapidly and inexpensively determine the amount of property loss without resorting to court process." *PHC, Inc. v. N.C. Farm Bureau Mutual Ins. Co.*, 129 N.C. App. 801, 804, 501 S.E.2d 701, 703 (1998); *Envor*, 123 N.C. App. at 546, 473 S.E.2d at 639-40 (noting that an appraisal is "analogous to an arbitration proceeding," in that "[i]n arbitration 'errors of law or fact . . . are insufficient to invalidate an award fairly and honestly made' "). However, we have explicitly held that where, as here, an appraisal provision does not mandate the application of the UAA, the Act's provisions are inapplicable. *PHC*, 129 N.C. App. at 804, 501 S.E.2d at 703; *compare Harrell*, 148 N.C. App. 183, 557 S.E.2d 580 (finding that umpire in appraisal did not exceed scope of powers, as specified by UAA, albeit without challenge by parties as to whether UAA provisions were actually applicable). Plaintiff is thus incorrect in its assertion that under *Hooper*, the trial court in the case *sub judice* was allowed to vacate or otherwise modify the appraisal award via the UAA.

[3] Furthermore, plaintiff's claim was not properly brought pursuant to the mechanisms of the Declaratory Relief Act, N.C.G.S. § 1-253, *et. seq.* (2001). To sustain a declaratory judgment action, the trial court must find that "an actual controversy exist[s] both at the time of the filing of the pleading and at the time of hearing." *Sharpe v. Park Newspapers of Lumberton*, 317 N.C. 579, 585, 347 S.E.2d 25, 30 (1986) (citation omitted). This jurisdictional prerequisite ensures that the trial court will not be adjudicating a mere difference in the parties' opinions or issuing "a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise." *Tryon v. Power Co.*, 222 N.C. 200, 204, 22 S.E.2d 450, 453 (1942) (citations omitted).

A declaratory proceeding can serve a useful purpose where the plaintiff seeks to clarify its legal rights in order to prevent the accrual of damages, or seeks to litigate a controversy where the real plaintiff in the controversy has either failed to file suit, or has delayed in filing. However, *a declaratory suit should not be used as a device for "procedural fencing."*

*Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 578-79, 541 S.E.2d 157, 164 (2000) (emphasis added) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994)), *disc. review denied*, 353 N.C. 370, 547 S.E.2d 433 (2001).

We recognize that declaratory judgment actions are appropriate proceedings in which to determine the parties' rights under an insurance contract, even prior to a breach of that contract. *See* N.C.G.S. § 1-254. Further, given the appropriate set of facts, an insurance company may certainly be able to challenge an appraisal award as being subject to fraud, duress, or other impeaching circumstances in a declaratory relief action. However, neither of the above situations existed in the case *sub judice.* Plaintiff did not request an interpretation of the appraisal provision; rather, while the binding appraisal proceeding was pending, plaintiff filed its complaint, albeit later amended, requesting that the trial court set the amount of loss. The appraisers, not the court, had the authority under the appraisal provision to set the amount of loss. Moreover, plaintiff filed its action in Wake County, where venue was improper, and, at the same time, filed a separate motion to stay appraisal in Johnston County. Here, plaintiff's contention that the award was subject to impeachment is better addressed as a defense to the breach of contract action than as a declaratory judgment action which appears to be little more than a case of "procedural fencing." Accordingly, we conclude that the trial court was correct in granting defendants summary judgment as to plaintiff's declaratory judgment action. This assignment of error is overruled.

## II.

[4] Plaintiff next argues that the court erred in granting summary judgment as to defendants' breach of contract claims because there were genuine issues of fact as to certain impeaching circumstances which could invalidate the appraisal award and as to whether defendants failed to fulfill their obligation under the insurance policy.

As noted *supra*, an appraisal award is binding where the relevant appraisal provision has been followed and there is no evidence of fraud, duress, or impeaching circumstances. *See Enzor*, 123 N.C. App. at 545-46, 473 S.E.2d at 639. Here, plaintiff claims that impeaching circumstances existed based upon the bias of the umpire, C. P. Thompson. To support its argument, plaintiff notes that: 1) there was an "*ex parte*" meeting between Thompson and defendants' appraiser, Lewis O'Leary; and 2) O'Leary included items in his appraisal report that were not damaged due to the hurricane.

Plaintiff contends that the so-called "*ex-parte*" meeting between Thompson and O'Leary represented impeaching circumstances based upon several cases which we find distinguishable from the facts of the case *sub judice*. In *Grimes v. Insurance. Co.*, 217 N.C. 259, 7 S.E.2d 557 (1940), the only North Carolina case cited by plaintiff, our Supreme Court found that an appraisal award was invalid where, after naming appraisers, one of the parties was not notified of the appraisal proceedings and did not have an opportunity to be heard. *Grimes* is clearly distinguishable in that plaintiff is not claiming that it did not have an opportunity to be heard, only that its appraiser was absent from the last of many meetings in the appraisal process.

The cases from other jurisdictions presented by plaintiff in support of its argument are also distinguishable from the present case. Illustrative of that distinction is the comparison of the case before us to that of *Zoni v. Importers & Exporters Ins. Co.*, 12 A.2d 575 (Pa. 1940). In *Zoni*, the insured moved to set aside an appraisal award on the grounds of fraud, alleging that the insurance company's appraiser met with the umpire "secretly and without notice to or knowledge of the plaintiff or her representative . . . and for the purpose of unlawfully and fraudulently reaching a figure for the loss lower than the actual amount." *Id.* at 577. The *Zoni* court concluded that the resulting appraisal was invalid because the umpire met exclusively with one parties' appraiser without presence or notice to the other. *Id.* at 577. Importantly, the *Zoni* court focused on the secretive and fraudulent nature of the meeting. *Id.*; *Providence Washington Ins. Co. v. Gulinson*, 215 P. 154 (Colo. 1923) (invalidating appraisal award where one appraiser and one umpire met in secret after only one meeting with the other appraiser and no further attempts by the umpire to have a meeting between the three); *see also Hozlock v. Donegal Co./Donegal Mut. Ins. Co.*, 745 A.2d 1261 (Pa. Super.) (recognizing that *Zoni* court "particularly stressed the fact that it appeared as if the umpire and one appraiser connived to fix a fraudulent award"), *appeal denied*, 795 A.2d 977 (Pa. 2000).

Our review of the relevant case law leads us to conclude that the existence of impeaching circumstances is to be determined on a case by case basis. In the present case, there was no evidence of fraud or conniving actions on the part of the umpire O'Leary to exclude plaintiff's appraiser, Bryant, from the appraisal process. The policy required that to set the amount of loss, any two participants as between the insurer's appraiser, insured's appraiser or umpire had to agree on the amount. Thompson, the umpire, testified in his deposition that he met with both appraisers together three times: on 29 September 2000, 4 November 2000 and 16 December 2000. At the December meeting, the appraisers could not agree on an amount. Thompson testified that plaintiff's appraiser, Evan Bryant, did not provide him with the supporting documentation he requested. Bryant told Thompson that he left it at the airport and never provided the requested documentation. Bryant did not request additional time, and had been told that Thompson was close to issuing an award. Thompson, therefore, did not believe that he needed to wait for anything else from plaintiff. According to Thompson, "I felt there was no purpose after three meetings, and he having given me his final report."

Because O'Leary's figures were closer to what Thompson believed to be an accurate amount to repair defendants' house, and because one of the appraisers had to agree with Thompson for an award to issue, Thompson orally discussed a final amount with O'Leary. We conclude that plaintiff failed to show that the *ex parte* communications with O'Leary constituted an impeaching circumstance such that the appraisal award must be overturned.

[5] We further find that there was no reason to invalidate the appraisal award based upon what plaintiff alleged was O'Leary's mistake in setting the amount of loss to include non-hurricane damage. We have previously held that mistakes by appraisers, like those made by arbitrators, are insufficient "to invalidate an award fairly and honestly made." *Harrell*, 148 N.C. App. at 187, 557 S.E.2d at 582 (citation and internal quotation marks omitted).

[6] Next, plaintiff argues that an issue of fact existed as to defendants' obligation under the insurance contract to repair damage to their house. Because the parties proceeded with appraisal, the result of which was a binding determination of loss, plaintiff cannot now contend that other provisions in the contract serve to invalidate the resulting appraisal award. *See Harrell*, 148 N.C. App. 183, 557 S.E.2d

580 (holding that given binding nature of appraisal award and in absence of impeaching circumstance, a provision in insurance contract contrary to appraisal award did not invalidate the award). This assignment of error is therefore overruled.

### III.

[7] Finally, plaintiff argues that the trial court usurped our jurisdiction in striking plaintiff's notice of appeal as a sanction for Rule 11 violations. Because we have granted plaintiff a writ of certiorari, agreeing to hear plaintiff's appeal on its merits, we conclude that its arguments concerning whether the trial court erred in striking its notice of appeal are moot.[1]

AFFIRMED.

Judges McCULLOUGH and TYSON concur.

---

1. The trial court also taxed defendants' costs and attorney's fees against plaintiff. However, plaintiff does not argue on appeal that the trial court erred in so doing. By failing to argue error, plaintiff has abandoned any issues with regards to whether the sanction was proper. N.C.R. App. P. 28(a).