JERRY A. HAILEY, JR., D/B/A HAILEY PROPERTIES, PLAINTIFF-APPELLEE v.
AUTO-OWNERS INSURANCE COMPANY, DEFENDANT-APPELLANT

No. COA06-187

(Filed 20 February 2007)

**1. Declaratory Judgments; Insurance— commercial casualty insurance—premature invocation of appraisal clause**

Plaintiff insured prematurely invoked appraisal under a commercial casualty insurance policy for damages to his properties in an ice storm because: (1) by the terms of the appraisal clause, it was contemplated that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist; (2) plaintiff's disagreement with defendant's adjustment of the claims was unilateral since plaintiff did not communicate to defendant any amount of loss greater than what defendant had already paid; (3) the unsupported opinion of the insured that the insurer's payment was insufficient does not rise to the level of a disagreement necessary to invoke appraisal; (4) to the extent defendant requested that plaintiff comply with plaintiff's post-loss duties prior to invoking appraisal, such compliance was a necessary condition precedent to the invocation of appraisal since otherwise those terms of the contract would be rendered meaningless; and (5) even assuming arguendo that the pertinent letter sent by defendant to plaintiff about the amount of loss from the inception of the ice storm claims served as a blanket denial of those claims, the parties still did not disagree on the amount of the losses pursuant to the appraisal clause since plaintiff failed to substantiate the amount of loss he allegedly sustained for each of the properties.

**2. Appeal and Error— motion for stay pending appeal— mootness**

Although defendant insurance company contends the trial court erred in a declaratory judgment action by denying its motion for stay pending appeal, this issue is dismissed as moot because the Court of Appeals already determined that appraisal should not have gone forward, and thus a determination of the propriety of the trial court's denial of defendant's motion for stay pending appeal can have no practical effect on the case.

HAILEY v. AUTO-OWNERS INS. CO.

[181 N.C. App. 677 (2007)]

Appeal by Defendant from judgment entered 29 June 2005 by Judge Kenneth C. Titus and from order entered 7 October 2005 by Judge Donald L. Smith in Superior Court, Wake County. Heard in the Court of Appeals 17 October 2006.

*Armstrong & Armstrong, PA, by L. Lamar Armstrong, Jr., for Plaintiff-Appellee.*

*Brown, Crump, Vanore & Tierney, L.L.P., by O. Craig Tierney, Jr., for Defendant-Appellant.*

McGEE, Judge.

Auto-Owners Insurance Company (Defendant) appeals from a declaratory judgment entered 29 June 2005 and from the denial of its motion for stay pending appeal. For the reasons stated below, we reverse the declaratory judgment and dismiss as moot Defendant's appeal of the denial of its motion for stay pending appeal.

Jerry A. Hailey, Jr., d/b/a Hailey Properties (Plaintiff) filed a complaint against Defendant seeking a declaratory judgment. Plaintiff alleged he owned several properties in Wake County that were insured with Defendant under a commercial all-risk property casualty insurance policy. Plaintiff alleged that his properties were damaged and filed damage claims with Defendant. Plaintiff alleged that Defendant made payments on the claims, but that Plaintiff later discovered the payments were insufficient to cover Plaintiff's losses. Plaintiff eventually invoked the appraisal clause under the policy, appointed an appraiser, and requested that Defendant appoint its appraiser. The parties' appraisers failed to agree on umpires, and Plaintiff petitioned the trial court to appoint umpires. The trial court appointed umpires for some of the claims. Defendant contended that Plaintiff was not entitled to petition the trial court for the appointment of umpires. Plaintiff sought a declaration as to the rights, liabilities, obligations, and interests of the parties.

Defendant filed an answer and counterclaim dated 7 May 2004. In its counterclaim, Defendant alleged that "[p]rior to demanding appraisal on these claims, [Plaintiff] failed to timely produce any documentation, invoices, bills, estimates, [or] cost of repair[] to support any claim in excess of what had already been paid for the subject claims, or to support [Plaintiff's] value of the claim[s]." Therefore, Defendant alleged, there was no disagreement between Plaintiff and Defendant as to the value of the claims, and Plaintiff's requests for appraisal were premature.

Defendant's counterclaim extended to all of Plaintiff's claims, which included claims arising from (1) an ice storm on 5 December 2002, (2) a fire on 4 July 2003, and (3) a windstorm on 18 September 2003. Moreover, all of Plaintiff's properties that were allegedly damaged were listed under four insurance policies with Defendant. The sections of each policy, dealing with appraisal and duties in the event of loss, are substantially similar. The "appraisal" section of one of the policies provides that "[i]f we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." The policies define "we" as Defendant and "you" as Plaintiff. One of the policies provides the following "duties in the event of loss or damage":

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this

within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

The trial court entered a partial declaratory judgment on 9 September 2004, resolving the issue regarding Plaintiff's requests for the appointment of umpires in Plaintiff's favor. The trial court conducted hearings on Defendant's counterclaim on 9 and 10 June 2005. At the conclusion of Defendant's evidence, Plaintiff moved for involuntary dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b). The trial court granted Plaintiff's motion and entered a declaratory judgment on 29 June 2005.

The trial court made the following findings of fact, which Defendant challenges:

15. There is no word, phrase or other express linkage in the appraisal section to the duties after loss section and the appraisal section does not in any express manner provide any condition precedent to invoking appraisal other than the insured and insurer "disagree[."]

. . .

17. The duties after loss section contains no word, phrase or other express linkage of any of the duties of the insured provided therein to the appraisal section and does not in any express manner provide that any duty listed therein is a condition precedent to invoking appraisal.

18. [Defendant] agreed that appraisal is a policy benefit that it was obligated to proactively and in good faith provide [Plaintiff] to the full extent to which [Plaintiff] was entitled.

19. Pursuant to insurance policies [Defendant] issued to [Plaintiff] that were in force at the time of [Plaintiff's] claims and applied to [Plaintiff's] claims, [Plaintiff] had a right to invoke appraisal as provided by the policies according to the sections described above.

20. After the ice storm on 5 December 2002, [Plaintiff] gave prompt and proper notice of claims for damage to several of his properties insured by [Defendant].

. . .

24. On or about 11 January 2003, [Mr.] Wilson wrote a letter to [Plaintiff] advising that *"(. . .)[i]n looking at your claim, it has been determined that there was no physical damage to any of your property. Due to there being no damage to any of the dwellings or any other structures, [Defendant] is not in a position to make any payment[.]"*

. . .

26. [Defendant] and [Mr.] Wilson never retracted the letter.

27. The [Trial] Court relies on this testimony only for the purpose of finding that as a result of its blanket denial of ice storm claims, [Defendant] and [Plaintiff] disagreed from the inception of the claims.

28. On or about 27 February 2003, [Defendant] mailed checks to [Plaintiff] for amounts it determined unilaterally were appropriate for [Plaintiff's] ice storm claims.

. . .

30. Disagreement between [Defendant] and [Plaintiff] continued thereafter.

. . .

32. [Plaintiff] provided notice of [Plaintiff's] appointment of his appraiser and his demand for appraisal by sending a letter to [Defendant] through its agent, Darren Carrino, an independent agent with Craft Insurance Co., who forwarded notice to [Defendant].

. . .

36. One of [Defendant's] bases for its withdrawal from appraisal was that it did not "disagree" with [Plaintiff] because [Plaintiff] had not submitted a detailed written estimate that [Defendant] advised the policies required before [Plaintiff] was entitled to invoke appraisal.

. . .

38. [Defendant's] response to all such requests for appraisal was substantially similar.

39. In all of these claims, [Defendant] refused to appoint an appraiser and refused to participate in appraisal or afford [Plaintiff] appraisal on the ground that [Defendant] did not "disagree" with [Plaintiff] as [Defendant] interpreted the policies.

40. In each case, [Defendant's] contention that it did not "disagree" with [Plaintiff] was based on its contention that it had a right to a detailed written estimate, with subsequent disagreement, before [Plaintiff] invoked appraisal.

. . .

42. Although [Defendant] had alleged in its Answer & Counterclaims that [Plaintiff's] conduct in failing to give notice to [Defendant] prior to approaching the Judge for umpire appointments was wrongful, [Defendant] conceded that neither the policy nor the law of North Carolina required notice.

43. [Plaintiff's] conduct in pursuing appointments of umpires was proper.

The trial court made the following conclusions of law, which Defendant challenges:

4. When [Plaintiff] did not agree with the positions taken by [Defendant] regarding its denial of ice storm claims, its payment of less than what [Plaintiff] thought he was entitled to receive, and the passage of time without further adjustment or payment, [Plaintiff] in the ordinary and plain meaning of the terms did "disagree" with [Defendant] as to "the amount of loss[."]

5. The policies do not expressly create any other condition precedent to invoking appraisal other than the parties "disagree" as to "the amount of loss[."]

6. Considering the lack of any term or provision in the appraisal section or in the duties after loss section that correlates one to the other, or in any way expressly conditions invocation of appraisal to the insured's satisfactory (to the insurer) compliance with duties after loss, the duties after loss section is not a condition precedent to invoking appraisal.

. . .

8. [Defendant] implied and read into the appraisal section a condition precedent to appraisal that does not exist by the express terms of the policies.

. . .

11. [Plaintiff] was entitled to invoke appraisal and his demands for appraisal were not premature and were appropriate.

12. [Plaintiff] complied with the policies' terms and conditions in his petitions to appoint umpires. .

The trial court declared and ordered that Plaintiff had complied with the policy terms and conditions related to invoking appraisal. The trial court also declared and ordered that the orders appointing umpires were valid and that appraisal was appropriate and could proceed.

Defendant filed a motion for stay pending appeal on 27 July 2005, which the trial court denied on 7 October 2005. Defendant appeals both the declaratory judgment and the order denying its motion for stay pending appeal.

I.

[1] Defendant argues the trial court erred by granting Plaintiff's motion for involuntary dismissal. Specifically, Defendant argues that Plaintiff prematurely invoked appraisal (1) before there was a disagreement as to the amount of loss and (2) before Plaintiff complied with his duties in the event of loss. "The proper standard of review for a motion for an involuntary dismissal under Rule 41 is (1) whether the findings of fact by the trial court are supported by competent evidence, and (2) whether the findings of fact support the trial court's conclusions of law and its judgment." *Dean v. Hill*, 171 N.C. App. 479, 483, 615 S.E.2d 699, 701 (2005). " 'The trial court's conclusions [of law], however, are completely reviewable.' " *Beck v. Beck*, 175 N.C. App. 519, 523, 624 S.E.2d 411, 414 (2006) (quoting *Baker v. Showalter*, 151 N.C. App. 546, 549, 566 S.E.2d 172, 174 (2002)).

This appears to be a case of first impression in North Carolina. However, in support of its argument that Plaintiff prematurely invoked appraisal, Defendant cites *U.S. Fidelity & Guar. Co. v. Romay*, 744 So. 2d 467 (Fla. Dist. Ct. App. 1999), where the District Court of Appeal of Florida, Third District, sitting en banc, considered three cases which presented identical issues. *Id.* at 468. In each case, the insureds' homes were damaged by Hurricane Andrew in August

**HAILEY v. AUTO-OWNERS INS. CO.**

[181 N.C. App. 677 (2007)]

1992 and United States Fidelity & Guaranty Company (USF & G) paid the insureds' claims. *Id.* at 469. Between four and five years later, the insureds notified USF & G that they disputed the amount of loss. *Id.* The insureds demanded additional compensation and notified USF & G that they would invoke appraisal if payment was not made. *Id.* USF & G advised the insureds that prior to invoking appraisal, the insureds were required to comply with their duties after loss. *Id.* The insureds then filed petitions to compel appraisal. *Id.* Two insureds had submitted an unsworn damage estimate with their demand for payment and one insured "submitted nothing until the day the trial judge granted his motion to compel appraisal; he then filed a sworn proof of loss." *Id.* In two of the cases, the trial court granted the insureds' petitions to compel appraisal. *Id.* at 468. In the third case, the trial court entered summary judgment for USF & G, finding the insured's petition to compel appraisal premature. *Id.*

On appeal, the Court interpreted the appraisal provision in the parties' insurance contract, which read as follows: " 'If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.' " *Id.* at 469. The Court held that

> By these terms, the disagreement necessary to trigger appraisal cannot be unilateral. As expressly indicated in the parties' agreement, the failure to agree must be between the "you" and the "we." In other words, by the terms of the contract, it was contemplated that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist.

*Id.* at 469-70. The Court quoted *Couch on Insurance* as follows:

> "This means that the existence of a real difference in fact, arising out of an honest effort to agree between the insured and the insurer, is necessary to render operative a provision in a policy for arbitration of differences. Furthermore, there must be an actual and honest effort to reach an agreement between the parties, as it is only then that the clause for arbitration becomes operative, the remedies being successive."

*Id.* at 470 (quoting 14 *Couch on Insurance* 2d § 50:56 (rev. ed. 1982)).

The Court also stated that the parties contemplated an exchange of information prior to invoking appraisal by placing certain post-loss obligations on the insureds in the insurance contract. *Id.* Although

**HAILEY v. AUTO-OWNERS INS. CO.**

[181 N.C. App. 677 (2007)]

the Court recognized, in its discussion of the appraisal process, that the appraisal clause did not make any reference to compliance with other policy provisions, "such an omission cannot be reasonably interpreted to mean, as the insureds would have us believe, that the insurer did not intend to place any conditions precedent to appraisal[.]" *Id.* at 471. The Court also stated that the omission of any reference to other policy provisions in the appraisal clause did not create an ambiguity in the insurance contract. *Id.* The Court held as follows:

> No reasonable and thoughtful interpretation of the policy could support compelling appraisal without first complying with the post-loss obligations. If that were so, a policyholder, after incurring a loss, could immediately invoke appraisal and secure a binding determination as to the amount of loss. That determination, in turn, could be enforced in the courts. Under that framework, expressed and agreed-upon terms of the contract, i.e., the post-loss obligations, would be struck from the contract by way of judicial fiat and the bargained-for contractual terms would be rendered surplusage. There exists but one reasonable interpretation of the terms of the policy at issue here: The insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered.

*Id.*

Accordingly, the Court reversed the two orders granting the insureds' petitions to compel appraisal and remanded "with directions that the trial court require compliance with the policy's preconditions to appraisal before granting motions to compel appraisal." *Id.* at 472. The Court affirmed the order in the third case which granted summary judgment to USF & G. *Id.*

The Eleventh Circuit Court of Appeals followed *Romay* in *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771 (11th Cir. 2000). In *Galindo*, the insureds made claims on their insurance policies after they sustained property loss and damage from Hurricane Andrew. *Id.* at 773. The insurance companies paid the claims in 1992 and 1993 and the insureds accepted payment. *Id.* at 773 n. 1. Approximately four to five years later, the insureds contacted their insurance companies and demanded payment of supplemental claims on the basis of unsworn and unsigned damage estimates. *Id.* at 773. The insureds also told their insurance companies that the insureds would invoke appraisal if payment was not made within a few days. *Id.* The insurance compa-

nies informed the insureds that appraisal was premature prior to an investigation of the supplemental claims. *Id.*

The insureds sought declaratory relief by compelling appraisal and the insurance companies removed the cases to federal court. *Id.* at 773-74. In each of the cases, the trial court "concluded that the insureds had prevented the insurance companies' investigation of the supplemental claims, which was a condition precedent to either party's demand for appraisal because of failure to agree regarding the loss amount." *Id.* at 774. In each case, the trial court granted the insurance companies' motions to dismiss and motions for summary judgment. *Id.* The Eleventh Circuit cited *Romay*, and held as follows:

> Because we apply Florida law to resolve these consolidated appeals and the Florida Third District Court of Appeal has decided en banc in *Romay* that an insurance company must be given an opportunity to investigate a supplemental claim before there can be a disagreement between the parties regarding the amount of property loss or damage to effectuate appraisal, we AFFIRM.

*Id.* at 777.

We find these cases persuasive and now adopt the *Romay* and *Galindo* approach. In the present case, Plaintiff made claims on his policies for damage to his properties, and Defendant adjusted those claims and made payments to Plaintiff. Plaintiff then demanded appraisal on the basis that he disagreed with the amounts paid by Defendant. Defendant requested that Plaintiff provide Defendant with detailed estimates of damage to Plaintiff's properties. Defendant also reminded Plaintiff of Plaintiff's duties in the event of loss. However, Plaintiff did not provide Defendant with any documentation that the damage to any of Plaintiff's properties was greater than the amount already paid by Defendant. In one case, Plaintiff did provide an estimated amount of loss, but did not provide any support for that estimate.

Pursuant to *Romay* and *Galindo*, Plaintiff in the present case prematurely invoked appraisal. In *Romay*, the Court held that by the terms of the appraisal clause in *Romay*, which is nearly identical to the appraisal clause in the present case, "the disagreement necessary to trigger appraisal cannot be unilateral." *Romay*, 744 So. 2d at 469-70. By the terms of the appraisal clause, the Court continued, "it was contemplated that the parties would engage in some meaningful

exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist." *Id.* at 470. However, in the present case, Plaintiff's disagreement with Defendant's adjustment of the claims was unilateral. The trial court's findings of fact reveal that Plaintiff did not communicate to Defendant any amount of loss greater than what Defendant had already paid. Rather, Plaintiff, when dissatisfied with the amounts he received from the settlement of his claims, immediately invoked appraisal. We hold that the unsupported opinion of the insured that the insurer's payment was insufficient does not rise to the level of a disagreement necessary to invoke appraisal.

Moreover, *Romay* held that even though the appraisal clause did not refer to the insured's post-loss duties, it was only reasonable to require compliance with those duties, to the extent requested, prior to invoking appraisal. *Id.* at 471. If such compliance were not required, an insured could immediately invoke appraisal after incurring a loss and obtain a binding determination of the amount of loss. *Id.* "Under that framework, expressed and agreed-upon terms of the contract, i.e., the post-loss obligations, would be struck from the contract by way of judicial fiat and the bargained-for contractual terms would be rendered surplusage." *Id.* In the present case, to the extent Defendant requested that Plaintiff comply with Plaintiff's post-loss duties prior to invoking appraisal, such compliance was a necessary condition precedent to the invocation of appraisal. Otherwise, those terms of the contract would be rendered meaningless. Accordingly, we reverse the trial court's declaratory judgment and remand for entry of judgment for Defendant.

We note that the trial court found that, as a result of a letter sent by Defendant to Plaintiff, the parties disagreed on the amount of loss from the inception of the ice storm claims. While the parties did not include this letter in the record on appeal, the essential substance of the letter does appear in the record. We hold that even if this letter served as a blanket denial of Plaintiff's ice storm claims, which we do not decide, the parties still did not disagree on the amount of the losses pursuant to the appraisal clause because Plaintiff failed to substantiate the amount of loss he allegedly sustained for each of the properties.

II.

[2] Defendant also argues the trial court erred by denying its motion for stay pending appeal. However, this issue is moot. "A case is

'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison County Realtors Assn.*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996). In the present case, because we have already determined that appraisal should not have gone forward, a determination of the propriety of the trial court's denial of Defendant's motion for stay pending appeal can have no practical effect on the case. Accordingly, this issue is moot and we dismiss this assignment of error.

Reversed and remanded in part; dismissed in part.

Judges McCULLOUGH and GEER concur.