NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., PLAINTIFF
v. GERVIS E. SADLER, INDIVIDUALLY AND BY AND THROUGH STEVE ANTHONY
SADLER, HIS ATTORNEY-IN-FACT, DEFENDANT

No. COA09-1054

(Filed 18 May 2010)

**1. Appeal and Error— interlocutory order and appeal—Rule 54(b) certification**

Plaintiff's appeal from the grant of a partial summary judgment order in favor of defendant was certified for immediate appeal under N.C.G.S. § 1A-1, Rule 54(b).

**2. Insurance— homeowner's insurance—partial summary judgment—breach of contract—appraisal process**

The trial court did not err in a declaratory judgment action seeking an appraisal amount for a homeowner's insurance claim by granting partial summary judgment in favor of defendant on a counterclaim for breach of contract and awarding defendant the full appraisal value for damage to the house caused by wind. Defendant presented sufficient evidence of a disagreement as to the value of the damage to enter into the appraisal process under the terms of the insurance policy. Further, the trial court's appointment of an umpire absent a representative appraiser by plaintiff

insurance company was proper. Appraisal awards are assumed to be valid and binding absent evidence of fraud, duress, or other impeaching circumstances.

Appeal by plaintiff from judgment entered 21 May 2009 by Judge William C. Griffin, Jr. in Hyde County Superior Court. Heard in the Court of Appeals 10 February 2010.

*Young Moore and Henderson, P.A., by Walter E. Brock, Jr. and Matthew J. Gray, for plaintiff-appellant.*

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., and Ledolaw, by Michele A. Ledo, for defendant-appellee.*

BRYANT, Judge.

Plaintiff North Carolina Farm Bureau (Farm Bureau) appeals from an order granting defendant Gervis Sadler (Sadler) partial summary judgment on a counterclaim for breach of contract and awarding Sadler $150,000.00 plus interest from the date of breach. For the reasons stated herein, we affirm.

On 1 September 2005, Sadler submitted a home owner's insurance claim to Farm Bureau for damage to his house occurring during a wind storm on 6 May 2005. Farm Bureau initially denied the claim but, after a request to re-assess the property, estimated Sadler's damages to be valued at $3,203.03 "for roof damage and damage due to roof damage." On 18 May 2006, Farm Bureau issued Sadler a check for $3,203.03. The check went uncashed, and on 5 June 2006, Sadler provided Farm Bureau with the following notice:

> [W]e feel like there is a lot more you should have covered. We have talked to some friends of ours that have used the appraisal process to work these sort of things out. This process sounds like it would work perfect and we would like to use it. Please go ahead and name the parties you intend to represent you. We are talking to . . . some other folks about being our representative. As soon as we get someone to agree to it we will give you their name."

On 22 June 2006, Sadler retained Lewis O'Leary as his representative in the appraisal process. Farm Bureau did not immediately respond. On 30 June 2006, the trial court entered an order appointing Martin Overbolt to serve as umpire for the parties' respective appraisers.

On 31 July 2006, Farm Bureau retained appraiser Rick Manning. In his summary report, Manning stated that his "inspection was to determine damages from wind which allegedly came from a storm on May 6, 2005." Manning noted damage to roof shingles, water stains on interior ceiling, mold growth, and termite damage. Manning assessed the value of loss at $31,561.39.

On 1 February 2008, Umpire Overbolt and Sadler's appraiser agreed on an appraisal amount of $162,500.00. Farm Bureau filed a complaint for declaratory relief in which it argued among other things that the appraisal award was not covered by the homeowner's policy. Sadler counterclaimed alleging breach of policy/contract, breach of covenant of good faith, and unfair claim settlement practices.

On 21 May 2009, the trial court entered an order granting partial summary judgment in favor of Sadler, concluding that no genuine issue of material fact existed with respect to Sadler's counterclaim for breach of contract and that considering the categorical limits of Sadler's homeowner's insurance policy and the pertinent deductible Sadler was "entitled to summary judgment against Farm Bureau in the amount of $150,500, plus interest . . . ." The order was certified for immediate appeal pursuant to Rule 54(b). Farm Bureau appeals.

---

[1] "An order is interlocutory if it does not determine the entire controversy between all of the parties." *Romig v. Jefferson-Pilot Life Ins. Co.*, 132 N.C. App. 682, 684, 513 S.E.2d 598, 600 (1999) (citation omitted).

> [From an interlocutory order,] a party may appeal where the trial court enters a final judgment with respect to one or more, but less than all of the parties or claims, and the court certifies the judgment as immediately appealable under Rule 54(b) of the North Carolina Rules of Civil Procedure. . . . [T]he burden is on the appellant to present appropriate grounds for this Court's acceptance of an interlocutory appeal and our Court's responsibility to review those grounds.

*Id.* at 685, 513 S.E.2d at 600 (internal citations omitted).

Farm Bureau argues that the trial court entered a final judgment as to Sadler's counterclaim for breach of contract. We agree and note that the trial court's order substantially determines the action in favor of Sadler. Further, as previously noted, the trial court certified the

order for immediate appeal. Therefore, we consider the merits of Farm Bureau's appeal.

------

On appeal, Farm Bureau raises the following three arguments: did the trial court err in granting Sadler's motion for summary judgment for the full amount of the appraisal award where (I) Sadler violated the policy in obtaining the appraisal award; (II) the policy states that the appraisal award is subject to reduction; and (III) Farm Bureau did not waive the policy limitations applicable to the appraisal award.

Under our Rules of Civil Procedure, Rule 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c) (2007). "[W]hen considering a summary judgment motion, all inferences of fact must be drawn against the movant and in favor of the party opposing the motion. We review a trial court's order granting or denying summary judgment de novo." *Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 353-54 (2009) (internal citations, quotations, and ellipsis omitted).

*I*

[2] Farm Bureau first questions whether the trial court erred in granting Sadler's motion for summary judgment and awarding him the full appraisal value for damage to the house. Farm Bureau contends that Sadler violated the terms of his policy by (a) engaging in an appraisal that purported to determine causation and policy coverage as opposed to mere value loss, (b) failing to demonstrate a genuine disagreement as to the amount of loss prior to demanding an appraisal, and (c) failing to allow the appraisers the contracted time to reach an agreement on a suitable umpire prior to obtaining the ex-parte appointment of an umpire by the trial court. We separately address each contention.

*A*

Farm Bureau contends that Sadler violated the terms of his insurance policy by submitting an appraisal that included the date and the cause of the damage to the Sadler house, beyond merely providing the value of the loss. We disagree.

To support its position, Farm Bureau cites *High Country Arts and Crafts Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629 (4th Cir. 1997), where the appraisers determined "the period of coverage under the business interruption provisions of the policy in question should be limited to sixty days." *Id.* at 631. The Court held that "the policy conferred on appraisers only the right to determine 'the amount of loss,' and consequently the parties [were] not to be bound by the appraisers' determinations of coverage issues." *Id.* at 634. The matter before us is distinguishable.

In the instant case both parties acknowledged at some point that the determination of loss was based on wind damage. Farm Bureau's appraiser, Manning, stated that his "inspection [of the Sadler house] was to determine damages from wind which allegedly came from a storm on May 6, 2005." Sadler's appraiser also identified the date of the loss as 6 May 2005 and the cause of the damage as wind. Therefore, this scenario, where the appraisers were informed of or identified the likely cause of damage to the property and considered that cause when assessing the property for damage and loss of value, is distinguishable from that in *High Country Arts*. The appraisers in *High Country Arts* reviewed the insurance policy at issue and in essence interpreted its content, then limited the scope of their assessment to the extent of damage they interpreted the policy to cover.

Here, the appraisers were clearly informed as to the cause of damage—wind—and assessed Sadler's property for loss of value considering the type of damage that may have resulted from such a cause. The appraisers' individual notes on the likely cause and date of damage do not indicate an interpretation of Sadler's homeowner's insurance policy. We think the following language from a federal court in Delaware makes this point quite cogently. "Indeed, to the extent that the appraisers' assessment may overlap with a coverage question, the parties certainly may seek the Court's ultimate review. However, . . . it would be inappropriate to curtail the appraisal process simply because it might come shoulder-to-shoulder with subsequent legal questions." *CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F. Supp. 2d 259, 269 (D. Del. 2000). We note the additional compelling language stated by the *CIGNA* Court.

> As a general matter, public policy favors alternate resolution procedures like the appraisal process. If the Court were to curtail the appraisers authority to include only dollar value assessments without regard for whether the property was damaged as a result of the [cause insured against], the Court would be reserving a

plethora 'of detailed damage assessments for judicial review, thereby debunking the purpose of appraisal which is to minimize the need for judicial intervention.

*Id.* It would be impractical for an appraiser to make a value determination for potentially insured damages without acknowledging the cause. Therefore, we overrule this argument.

*B*

Farm Bureau argues that Sadler failed to demonstrate a genuine disagreement as to the amount of loss before demanding an appraisal. Farm Bureau cites *Hailey v. Auto-Owners Ins. Co.*, 181 N.C. App. 677, 640 S.E.2d 849 (2007) in support of its argument.

In *Hailey*, the plaintiff claimed that his properties were damaged and filed damage claims with the defendant. The defendant made payment on the claims. Subsequently, the plaintiff discovered that the payments were insufficient to cover his losses and invoked his insurance policy's appraisal clause, appointed an appraiser, and requested that the defendant do the same. *Id.* at 678, 640 S.E.2d at 850. On appeal, this Court reasoned that the plaintiff's disagreement with the amount proffered by the defendant was unilateral: the plaintiff failed to communicate to the defendant any amount of loss greater than the amount already paid. We held that "the unsupported opinion of the insured that the insurer's payment was insufficient does not rise to the level of a disagreement necessary to invoke appraisal." *Id.* at 687, 640 S.E.2d at 855. The facts of the instant case are distinguishable.

Here, Sadler gave notice of his claim on 1 September 2005. In a letter to Farm Bureau, Sadler stated that a night storm occurred on 6 May 2005, and following the storm, shingles were missing from his roof. Farm Bureau denied the claim. On 18 May 2006, per Sadler's request, a Farm Bureau adjuster assessed the property and estimated the value of the damage to be $3,203.03. Farm Bureau issued a check for this amount. Sadler did not cash the check, and on 5 June 2006, Sadler informed Farm Bureau that he felt as though "there is a lot more [Farm Bureau] should have covered" and that others in similar situations had "used the appraisal process to work these sort of things out. This process sounds like it would work perfect [sic] and [I] would like to use it." We hold that Sadler presented sufficient evidence of a disagreement as to the value of the damage done to his house to enter into the appraisal process under the terms of the insurance policy.

N.C. FARM BUREAU MUT. INS. CO., INC. v. SADLER

[204 N.C. App. 145 (2010)]

*C*

Farm Bureau argues that Sadler prematurely obtained the *ex parte* appointment of an umpire. We disagree.

"Under North Carolina law, when the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court . . . ." *Fin. Servs. of Raleigh, Inc. v. Barefoot,* 163 N.C. App. 387, 395, 594 S.E.2d 37, 42 (2004) (citation and quotations omitted).

Here, the insurance policy contains the following pertinent provision:

> If you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of such item or loss. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request that a choice be made by a judge of a court of record in the state where the insured premises is located.

In a letter dated 5 June 2006, Sadler gave notice to Farm Bureau that he disagreed with Farm Bureau's assessed value of loss, and that he would utilize his insurance policy's appraisal process to determine the value of loss. Furthermore, Sadler stated that Farm Bureau should "go ahead and name the parties [Farm Bureau] intended to represent [it]." Within twenty days of the 5 June 2006 letter, Sadler selected Lewis O'Leary as his representative. Farm Bureau did not reply to Sadler's letter or give notice of its representative in the appraisal process until 31 July 2006. However, over twenty days after Sadler's notice to begin the appraisal process but prior to Farm Bureau giving notice of the person who would represent it, the trial court entered an order which stated that "[Farm Bureau] failed to appoint their choice of appraisers on a timely basis, in violation of the policy provision to do so. Pursuant to the insurance contract, it is ordered that Martin Overbolt is hereby appointed to serve as the Umpire."

Farm Bureau failed to adhere to the terms of Sadler's insurance policy by failing to appoint an appraiser within twenty days of receiving Sadler's notice of utilizing the appraisal process to determine the value of loss, and furthermore, failed to appoint an appraiser within a month of the close of the applicable twenty-day window. Therefore,

we hold the trial court's appointment of an umpire absent a representative appraiser by Farm Bureau was proper. Accordingly, Farm Bureau's arguments are overruled.

## II & III

Next, Farm Bureau argues that the trial court erred in granting partial summary judgment and awarding the full value of the appraisal award where genuine issues of material fact exist as to whether the appraisal award is subject to reduction due to policy coverages, exclusions, limitations and conditions. Furthermore, Farm Bureau argues that it did not waive and is not estopped from enforcing its policy terms and exclusions. Farm Bureau argues that there remain genuine issues of material fact as to whether Sadler's damages resulted from wind or causes specifically excluded, such as long-term water leaks and lack of flashing around the windows, settlement of the foundation, and expansion and contraction of framing and finishes due to seasonal moisture changes. We disagree.

"[A]ppraisal provisions are analogous to arbitrations, in that they provide a mechanism whereby the parties can rapidly and inexpensively determine the amount of property loss without resorting to court process." *Harleysville Mut. Ins. Co. v. Narron*, 155 N.C. App. 362, 368, 574 S.E.2d 490, 494 (2002) (citation and quotations omitted). "[T]his Court has held that if the contractual appraisal provisions are followed, an appraisal award is presumed valid and is binding absent evidence of fraud, duress, or other impeaching circumstances." *N.C. Farm Bureau Mut. Ins. Co. v. Harrell*, 148 N.C. App. 183, 185, 557 S.E.2d 580, 581 (2001) (citation and quotations omitted).

Here, the insurance policy states that "[i]f [the appraisers] fail to agree, they will submit their differences to the umpire. *A decision agreed to by any two will set the amount of loss.*" (Emphasis added). Farm Bureau does not suggest that fraud, duress, or other impeaching circumstances occurred during the appraisal process; therefore, we hold the trial court did not err in granting partial summary judgment to Sadler for the amount of the appraisal award. Accordingly, we overrule Farm Bureau's assignments of error.

Affirmed.

Judges ELMORE and STROUD concur.