MOORE, Chief Justice
(dissenting).
I respectfully dissent. As the main opinion notes, Baldwin Mutual Insurance Company (“BMIC”) raises two issues on appeal: (1) Whether the insureds may demand and invoke an appraisal in light of the fact that “the insureds ... have not complied with their post-loss obligations as described in provisions of the insured’s insurance policy”; and (2) whether the insureds have “established the precondition to the appraisal process, namely BMIC’s ‘failure to agree’ or ‘disagreement’ with the insureds as to the value of the loss at issue.” 181 So.3d at 1043.
As to the first issue, BMIC argues that the insureds may not demand or invoke an appraisal because, BMIC says, they have failed to comply with the post-loss obligations in their insurance policies. BMIC argues that, to properly invoke an appraisal under the various policies, the insureds were required to fulfill certain post-loss obligations. BMIC notes that no Alabama appellate court has addressed the effect of an insured’s noncompliance with post-loss obligations on the insured’s ability to invoke an appraisal. BMIC relies on cases from other jurisdictions for the proposition that an insured may not demand an appraisal without first complying with the post-loss obligations in the underlying policies. See, e.g., United States Fid. & Gaur. Co. v. Romay, 744 So.2d 467, 471 (Fla.Dist.Ct.App.1999) (“No reasonable and thoughtful interpretation of the policy could support compelling appraisal without first complying with the post-loss obligations.”); Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 (11th Cir.2000) (“[W]e hold that these insureds must comply with the post-loss terms of their respective homeowner’s policies, which enables the insurance companies to investigate the insureds’ claims and to disagree with the loss amount before the appraisal term becomes effective.”); Hailey v. Auto-Owners Ins. Co., 181 N.C.App. 677, 687, 640 S.E.2d 849, 855 (2007) (“[T]o the extent Defendant requested that Plaintiff comply with Plaintiffs post-loss duties prior to invoking appraisal, such compliance was a necessary condition precedent to the invocation of appraisal.”). According to BMIC, these foreign cases align with Alabama cases holding that an insurer is not obligated to pay an insured until the insured has submitted claims to the insurer pursuant to the terms of the policies. Nationwide Ins. Co. v. Nilsen, 745 So.2d 264, 267 (Ala.1998) (“[A]n insurer’s obligation to pay or to evaluate the validity of an insured’s claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.”). Therefore, BMIC asks this Court to hold that *1047 the insureds must satisfy certain post-loss obligations before demanding an appraisal according to their policies.
By their terms, however, the policies do not require the insureds to first satisfy thé post-loss obligations before demanding an appraisal. The parties stipulate that the appraisal provisions are roughly the same in each policy:
“Appraisal. If you and we fail to agree on the values of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The- appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to an umpire. A decision agreed to by any two will be binding. Each party will: Pay its chosen appraiser and bear the other expenses of'the appraisal and umpire equally.”
The section of the policies regarding post-loss obligations is entirely separate from the section of the policies regarding an appraisal. Neither section makes reference to the other. Nothing in the policies states that post-loss provisions must be satisfied before the insureds may invoke the appraisal provisions. Instead, the policies maintain that either BMIC or the insureds may demand an appraisal if BMIC and the insureds disagree on the value of the property or the amount of loss. Such disagreement could arise at any time. The policies do not specify that the insureds must bring their disagreement to the attention of BMIC only after they have satisfied their post-loss obligations. The plain and unambiguous terms of the policies suggest that the insureds may demand an appraisal whenever they disagree with BMIC regarding the value of the property or the amount of loss. Although BMIC attempts to portray the performance of post-loss obligations as a condition precedent to appraisal, no language in the policies supports that interpretation. Public Bldg. Auth. of Huntsville v. St. Paul Fire & Marine Ins. Co., 80 So.3d 171, 180 (Ala.2010) (“A court may not make a new contract for the parties or rewrite their contract under the guise of construing it”).
BMIC would. have us adopt holdings from othen jurisdictions to establish a bright-line rule for all Alabama insurance cases, namely, that an insured must always satisfy post-loss obligations before invoking appraisal provisions in an insurance policy. Such a rule impairs the obligation of existing contracts between insureds and insurers. “General rules of contract law govern an, insurance contract.” Safeway Ins. Co. of Alabama, Inc. v. Herrera, 912 So.2d 1140, 1143 (Ala.2005). “The Court must enforce the insurance policy as written if the terms are unambiguous.” Id.
Here, the policies are not ambiguous: They allow both BMIC and the insureds to demand an,appraisal if the parties, disagree about the value of the property or the amount of loss. Although to compel an appraisal in Florida requires a party first to comply with the post-loss provisions in an insurance policy,[8] no such law exists in Alabama. Had the parties wished to be bound by such a. rule, they could have included it -in their policies. It is unreasonable to hold that, when the insureds *1048 purchased their policies from BMIC, they should have expected Florida law to govern their policies. This Court should not read into a contract a provision that is not there. Harbison v. Strickland, 900 So.2d 385, 391 (Ala.2004) (““‘[A] court should ... presume that the parties intended what the terms of the ■ agreement clearly state.” ’ ” (quoting other cases)). Nor should this Court add .provisions to an insurance policy according to what it perceives to be industry-wide insurance standards and practices as to which the policy is silent. Poole v. Henderson, Black & Greene, Inc., 584 So.2d 485, 487 (Ala.1991) (“‘“The general rule of contract law.is that, if a written contract exists, the rights of the parties are controlled by that contract, and parol evidence is not admissible to contradict) vary, add to, or subtract from its terms.” ’ ’’(quoting Rime-Shatten Dev. Co. v. Birmingham Cable Commc’ns, Inc., 569 So.2d 332, 334 (Ala.1990), quoting in turn Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 11 (Ala.1989))). Therefore, I would affirm the circuit court’s April 2011 order as to the first issue.
As to the second issue, BMIC argues that the insureds have failed to establish a “failure to agree” or a “disagreement” regarding the amount of loss and, therefore, may not demand an appraisal. ■ In particular, BMIC contends ‘that the insureds failed to provide sufficient evidence (e.g., estimates from contractors) -that the parties disagreed about the amount of loss either before or after BMIC compensated the insureds for the loss. In response, the insureds allege that they established a “disagreement” regarding the amount of loss when, after receiving a check from BMIC to cover their loss, they notified BMIC’ that -the amount of the check was inadequate and that their demand for an appraisal is in accordance with their policies. The point of the appraisal, they contend, is to determine not whether a disagreement between the parties existed, but the amount on which the parties disagree.
BMIC' quotes from cases holding that there must be an actual disagreement between the parties regarding the value of the property or the amount of loss in order to effectuate an appraisal.[9] These holdings. are in keeping with the policies in this ease. BMIC does not argue that it disagrees with the insureds’ allegation that BMIC inadequately compensated them for their loss. Rather, BMIC alleges that it does not have enough information to determine whether it disagrees with the insureds regarding the amount of: the loss because the insureds have not identified, with sufficient evidence, what they consider the amount of loss to be. If the insureds had complied with the post-loss obligations in the policies, BMIC adds, there might have been sufficient evidence to allow BMIC to determine whether its assessment of the amount of loss differs from the insureds’ assessment ■ of the amount of loss.
Accordingly, this Court must determine whether the circuit court erred by denying BMIC’s motion for injunctive relief based on the circuit court’s finding that 14 of the 130 insureds had proffered enough evidence of the amount of loss to effectuate an appraisal under the policy. BMIC declares that no such evidence exists or that the- existing evidence does not support the circuit court’s finding that these insureds presented sufficient evidence to invoke the appraisal. However, BMIC does not describe the evidence in-the record and be *1049 fore the circuit court or explain how the specific contents of such evidence were inadequate to support the circuit court’s order granting the appraisal. This Court has stated that the appellant “has a heavy-burden when it seeks a reversal of an order on the ground that the decision is not supported by the evidence.” Curtis White Constr. Co. v. Butts & Billingsley Constr. Co., 473 So.2d 1040, 1041 (Ala.1985).
“It is the function of a .trial judge sitting as factfinder to decide facts where conflicts in the evidence exist. Such was the case here. ‘The appellate courts do not sit in judgment of the facts, and review the factfinder’s determination of facts only to the extent of determining whether it is sufficiently supported by the evidence, that question being one of law. No error of law. exists in this case, and where there is. evidence to support the decision reached by the factfinder, we must affirm its judgment.”
473 So.2d at 1041. Because there is ample evidence in the record to support the decision reached by the circuit court, including detailed estimates, drawings, and photographs of the damage at issue, and because BMIC makes no attempt to explain in detail how this evidence does not support the circuit court’s findings that the 14 insureds had properly invoked the appraisal provisions in the policies, I would affirm the circuit court’s order.
Finally, BMIC claims that, “if an insured has not retained a contractor or repairman, or obtained an estimate of the amount of loss from some other' source, it is difficult to understand how an insured could, in fact, disagree with the insurer’s determination of the amount of loss.” Nevertheless, the policies by their terms did not require the insured to retain a contractor or a repairperson or to obtain an estimate of the amount of loss from some other source as a condition precedent to -invoking the appraisal provisions. “‘Courts cannot make contracts for parties, but must give such contracts as are made a reasonable construction and enforce them accordingly.’ ” Charles H. McCauley Assocs., Inc. v. Snook, 339 So.2d 1011, 1015 (Ala.1976) (quoting R.P. Harris, & Co. v. Thomas, 17 Ala.App. 634, 635, 88 So. 51, 52 (1921)). “[W]e know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair.” Lilley v. Gonzales, 417 So.2d 161, 163 (Ala.1982). “[I]t is the duty of the [CJourt to enforce [the contract] as written.” Kinnon v. Universal Underwriters Ins. Co., 418 So.2d 887, 888 (Ala.1982). To hold otherwise is to require consumers purchasing- insurance policies to know not only what provisions appear in such policies, but also what judicially created provisions exist for such policies outside the four corners of the policies. . .Ordinary, consumers of insurance policies are not. lawyers and should not be expected to search “caselaw” for provisions applicable to their policies that do-not appear in such policies.
For these reasons, I respectfully dissent.

. See, e.g., Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass’n 12 Inc., 54 So.3d 578, 581-82 (Fla.Dist.Ct.App.2011).

. E.g., Jersey Ins. Co. v. Roddam, 256 Ala. 634, 637-38, 56 So.2d 631, 633-35 (1952); Romay, 744 So.2d at 469-70.