**REL: 09/30/2014**

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1100872

_____

**Baldwin Mutual Insurance Company**

**v.**

**Melissa Adair et al.**

**Appeal from Calhoun Circuit Court**
**(CV-11-0002)**

MURDOCK, Justice.[1]

_____

[1]This case was originally assigned to another Justice on this Court. It was reassigned to Justice Murdock on June 12, 2014.

1100872

Baldwin Mutual Insurance Company ("BMIC") appeals from an order of the Calhoun Circuit Court modifying a previous order granting BMIC injunctive relief. We reverse and remand.

<u>I. Facts and Procedural History</u>

On December 2, 2010, BMIC filed an "Application for Temporary Restraining Order, Motion for a Preliminary Injunction and Complaint for Declaratory Judgment" ("the complaint") in the Baldwin Circuit Court against 122 individuals who were insured under various insurance policies issued by BMIC ("the insureds").[2] According to the complaint, the insureds, through their legal counsel, had sent a letter dated November 12, 2010, to BMIC. The November 2010 letter stated:

> "On behalf of each of our clients listed on the attached, please know that we invoke the appraisal provision contained within the Baldwin Mutual policies issued to these insureds for each loss or claim suffered previously. We hereby identify Samantha Ronquille-Green as our appraiser, and insist that you identify your appraiser within the time specified in the policies [i.e., 20 days]. Obviously, we are only seeking appraisal of claims for which there is prior coverage."

---

[2]Additional defendants were subsequently added as insureds. In their briefs, the parties refer to there being approximately 130 insureds.

2

1100872

The letter also requested that BMIC provide the insureds' counsel with a copy of the policy file for each of the insureds, and the letter accused BMIC of "bad faith" as to its treatment of the insureds.

According to BMIC's complaint, the various insurance policies at issue provided that BMIC or an insured could invoke an appraisal process if BMIC and the insured could not reach an agreement as to the amount of compensation due the insured for a loss covered under the insured's policy. The appraisal process entailed BMIC and the insured each choosing an appraiser to estimate the insured's loss, and the appraisers in turn choosing an umpire who would resolve differences in the loss estimates provided by the appraisers. BMIC alleged:

> "11.  Under each of the appraisal provisions ..., a condition precedent to the demand of an appraisal is that there be a disagreement as to the amount of the loss.
>
> "12.  The November 12, 2010 letter, by which the [insureds] demand appraisal, fails to satisfy this condition precedent, as the [insureds] fail to establish that there is a disagreement as to the amount of the loss.
>
> "13.  Specifically, the purported appraisal demand <u>fails to set forth, among other things, the date of the loss, the cause of the loss, the</u>

location of the loss, any specifics concerning the nature of the loss, or why the [insureds] assert that there is a disagreement as to the amount of the loss.

"14. Upon information and belief, [BMIC] avers that all claims and losses have been adjusted and settled properly and without any disagreement or complaint by said ... policyholders.

"15. Under each of the appraisal provisions at issue, appraisal is proper only as to the 'amount of loss.'

"16. Therefore appraisal is appropriate under said policies only where (1) no coverage issue exists, and (2) the policyholder and insurer agree on the scope of the damage.

"17. To the extent the November 12, 2010 letter, by which the [insureds] demand appraisal, demands an appraisal as to issues concerning coverage or the scope of the loss, the appraisal demand is improper.

"18. [The insureds], separately and severally, therefore, have no right to invoke the appraisal process.

"19. [BMIC] further avers that the attorneys that demanded appraisal by way of the November 12, 2010 letter presently have filed nine (9) separate lawsuits against [BMIC], three of which set forth class action allegations (McCain v. Baldwin Mutual et al, CV-10-901266, Montgomery County ('McCain Class'), Moyers v. Baldwin Mutual et al, CV-10-900100, Escambia County ('Moyers Class'), and Smith v. Baldwin Mutual et al, CV-07-900258, Calhoun County ('Smith Class')).

"20. The Complaint as last amended in Smith defines the putative class as follows:

"'The class includes all of those past and present ... policyholders, who, after suffering an insured loss, were subjected to Defendant [John] Bobo's[3] nefarious ways following his dispatch to adjust the loss by [BMIC].'

"21. Upon information and belief, most, if not all, of the [insureds] were identified by their current attorneys and contacted by way of the Smith litigation. Specifically, the attorneys that now represent the [insureds] sent over two thousand (2,000) letters to various policyholders of [BMIC], including, most, if not all, of the [insureds].

"22. While simultaneously prosecuting the Smith class, the attorneys for the [insureds] are also seeking individual appraisals for the same individuals that would fall within the Smith class.

"23. The Complaint as last amended in Moyer[s] defines the putative class as follows:

"'The class includes past and present BMIC policyholders that suffered losses as a result of the occurrence of Hurricane Ivan for which they have not been duly compensated, upon whose land Defendants trespassed or who have otherwise been aggrieved by Defendants' conduct in the wake of Hurricane Ivan.

"'Members of the class or a class also include those BMIC policy holders who suffered losses as a result of Hurricane Ivan and who were subjected to the abnormally low pricing scheme perpetrated by Defendants, as herein described above,

---

[3]"Defendant Bobo" allegedly is a claims adjustor for BMIC.

5

and whose claims were consequently underpaid.'

"24.   Count IX of the Second Amended Complaint in Moyers sets forth a demand for Appraisal.

"25.   The Complaint as last amended filed in McCain defines the putative class as follows:

"'All holders of policies, issued by [BMIC], insuring properties within the State of Alabama who have suffered a loss within six (6) years of the filing of this complaint for which [BMIC] reduced the actual cash value of the same by reduction for the loss of value of undepreciable loss elements.'

"26.   The same Gloria McCain that serves as the class representative in the McCain class is among the Respondents on whose behalf appraisal has been demanded.

"27.   Because [the insureds] have failed to adequately identify the claims or losses for which they seek an appraisal, [BMIC] is unable to determine which of the [insureds] may fall within the class definitions set forth in the aforementioned class actions.

"28.   [BMIC] avers that proceeding with the appraisal process prior to a determination whether there exists a real dispute or disagreement and whether each [of the insureds], separately and severally, is entitled to invoke the appraisal process, will result in immediate and irreparable injury loss damage to [BMIC]."

(Emphasis added.)

In its complaint, BMIC sought a temporary restraining order, "until such time as this court has the opportunity to rule on [BMIC's] Motion for a Preliminary Injunction." BMIC asked that the restraining order "enjoin[] the [insureds] from engaging in the appraisal process and stay[] the time in which [BMIC] has to identify an appraiser or otherwise participate in said process." Also, BMIC asserted that "it will be caused immediate and irreparable injury, loss or damage should it be required to engage in the appraisal process demanded prior to determining whether [the insureds] separately and severally are entitled to invoke the appraisal process."

In regard to BMIC's motion for a preliminary injunction, the complaint requested that the court "conduct a hearing as to the issues set forth above and issue a preliminary injunction enjoining the [insureds] from proceeding with the appraisal process as requested herein during the pendency and until the final disposition of this cause." (Emphasis added.)

As to the declaratory relief requested, BMIC's complaint alleged as follows:

> "40. The insurance policies issued to the [insureds] by [BMIC] serve as the basis for the [insureds'] claims for appraisal. [BMIC] has not been able to determine that all [the insureds] have

7

been insured with or suffered a covered loss while insured with [BMIC].

"41. Each policy issued by [BMIC] provides, as a condition to the appraisal process, that there be a failure to agree on the amount of the loss.

"42. The appraisal demanded by the [insureds] does not identify the claims or losses for which appraisal is sought, but on information and belief, [BMIC] avers that all claims and losses have been adjusted and settled without any disagreement or complaint by said ... policyholders.

"43. [The insureds] fall within [the] definition of one or more of the three class actions that the attorneys for the [insureds] have filed, and therefore, may not pursue individual appraisals.

"44. [BMIC] seeks a determination from this Court pursuant to Alabama Code [1975,] § 6-6-220 et seq., as to the following issues:

"(1) Whether the [insureds] may properly demand an appraisal, where, as is the case here, the [insureds] (1) have failed to identify the claims or losses for which appraisal is sought; (2) have failed to set forth any reason as to why the [insureds] contend there is a disagreement as to the amount of loss; and (3) have failed to establish that any alleged disagreement is over the amount of loss, as opposed to a disagreement over coverage under the policy or the scope of loss or some other matter not subject to appraisal.

"(2) Whether the [insureds] may seek an appraisal, given the pendency of the three class actions filed by their attorneys.

"(3) Determine that those [insureds] who
have not suffered a loss insured by [BMIC]
are not entitled to appraisal."[4]

On December 21, 2010, the Baldwin Circuit Court held a hearing on BMIC's request for a preliminary injunction. During the hearing, the court summarized its understanding of the matter as follows:

"[I]f the essence of your injunction request is, we don't want to proceed with an appraisal until we know what the basis of their disagreement is, that's a very reasonable claim. That's a very reasonable

_____

[4]At the hearing on the temporary restraining order, the Baldwin Circuit Court raised the issue of abatement as to BMIC's action. Thereafter, BMIC filed a brief on that issue. In the brief, BMIC stated that no class had been certified in any of the class actions described in BMIC's complaint and that the class representative in McCain v. Baldwin Mutual, CV-10-901266, filed in Montgomery County, was the only one of the insureds who was currently a party in an action in which BMIC also was a party. It is not clear from the materials before us whether the claims at issue in McCain or the other two class actions referred to in BMIC's complaint are also claims that might be at issue in the present case. Thus, it is not clear whether BMIC's claims might be considered compulsory counterclaims that are subject to abatement, whether as to McCain or as to other insureds in the various class actions. See Ex parte Breman Lake View Resort, L.P., 729 So. 2d 849, 851 (Ala. 1999). Nor are we in a position to consider the issue whether or how abatement might apply where a class in a first-filed case has not been certified before a second action is filed. See Ex parte Water Works & Sewer Bd. of Birmingham, 738 So. 2d 783 (Ala. 1998)(discussing compulsory counterclaims in the context of a class action); see also Ex parte State Farm Mut. Ins. Co., 715 So. 2d 207 (Ala. 1997)(plurality opinion as to the issue of abatement in class actions).

9

position for [BMIC] to take, and that is, I paid you $5,000. You accepted $5,000. You're now saying $5,000 isn't enough. And they're simply saying, 'Well, why is it not enough? What are you basing that on?' And you give that to them and say, 'Here's why, because I've got estimates that it's going to cost another $2,500 to do the work or it did cost me an extra $2,500 to do the work.' Well, they may say, 'Okay. We agree with you. Here's another check for another $2,500,' and you don't need the appraisal process. It's not until you say it's worth more -- the claim is worth more and they say, 'No, it's not,' then you say, 'Well, then we're invoking the appraisal process.'"

Counsel for the insureds responded, however, stating that "that's not the law of the State of Alabama." A later colloquy is as follows:

"THE COURT: So if the insured goes back -- each of these insureds goes back and files an amended proof of loss --

"[BMIC'S COUNSEL]: We'll have -- what we're thinking is we should have a chance to investigate it. They could -- you're right. They could be a hundred percent right, Judge. We don't --

"THE COURT: -- had a chance to investigate it.

"[BMIC'S COUNSEL]: We have not. We don't even know -- there are people with five losses. Judge. That letter says every claim ever made under every policy for these people.

"....

"I mean, they've got to show us something that we can go back and investigate, and at that point, if we don't agree with what their appraiser says,

that's the disagreement that's triggered to invoke the appraisal process. ...

"....

"... They can't just say we disagree when they don't even know what our position is.

"[INSURED'S COUNSEL]: We know what your position is because you made a payment --

"[BMIC'S COUNSEL]: We made a payment under a claim that your person accepted. You've not sent us anything to let us know how it was deficient.

"[INSURED'S COUNSEL]: We don't have to do that, Your Honor.

"....

"THE COURT: How do you know if you don't say, you know, you underpaid us a thousand dollars, that they're not going to say you're right?

"....

"I don't think the appraisal process has been properly initiated yet because the insureds have not responded to the basis of their disagreement for [BMIC] to make a determination of whether they disagree with the assessment by the insureds or not, that until there is -- as [counsel for BMIC] described it -– a mutual disagreement ... where the insureds say, 'Our claim is for this amount of money and you've only paid us this amount,' and Baldwin Mutual says, 'No,' there's not a mutual disagreement and so, therefore, the appraisal process, it's preliminary to invoke the appraisal process and that once that happens -- so, therefore, I think, the insureds have to invoke some type of basis for why they're disagreeing with whatever they have been paid so far and then whatever the policy says as far

11

1100872

as a reasonable time ... to investigate and then determine whether you accept what their proof of loss is or whether you reject it and that if you reject it, then the appraisal process can be invoked.

"... It is the reopening of a claim that has been previously agreed to and the only way to logically reopen it is [for the insureds to] tell them what you disagree with what the amount of claim is. I mean, there ain't no other way to do it."

Immediately after the hearing, the Baldwin Circuit Court issued an order ("the December 2010 order"), which states:

"This matter is before the Court on a preliminary injunction filed by [BMIC] seeking a stay from the appraisal process attempted to be invoked by the [insureds], each being an insured of [BMIC], to re-open certain claims previously processed. Based on the legal and factual arguments presented, the Court finds that the appraisal process on these named [insureds] has not been adequately invoked because there is not a determination yet of whether there is an actual disagreement on the amount of loss. The [insureds] have notified [BMIC] that they now disagree with the amount of money offered to settle their claims. However, no insured has provided any basis for the current rejection of the offered amount or provided any amended claim of loss. [BMIC] cannot respond as to whether it can accept an insured's claim amount or not until it is presented with the new claimed amount. Therefore, since the appraisal process has not been triggered the time limit of 20 days for [BMIC] to disclose an appraiser is STAYED, pending each [insured] providing a basis for the rejection of [BMIC's] claim settlement offer."

(Capitalization in original; emphasis added.)

12

In the December 2010 order, the Baldwin Circuit Court also noted that the parties disagreed as to whether each of the insureds was entitled to discovery of BMIC's claim file as to that insured. The court stated: "Because there exist 3 pending class action suits in other courts within Alabama, all awaiting class certification, this Court is not inclined to undertake potential discovery issues that might better be addressed by a court that might certify the class." Thereafter, the present action was transferred to the Calhoun Circuit Court ("the circuit court"), where Smith v. Baldwin Mutual, CV-07-900258, the first-filed of the class actions against BMIC, was pending.[5]

On February 11, 2011, the insureds filed a motion in the circuit court entitled "Motion to Alter, Amend, or Vacate." The insureds alleged that "it is not clear on the face of the [December 2010] order whether the Circuit Court of Baldwin County intended to grant [BMIC's] application for a preliminary injunction," and they requested that the circuit court vacate the December 2010 order "to the extent that the

---

[5]Initially, the case was assigned to Calhoun Circuit Judge John C. Thomason. It was reassigned to Calhoun Circuit Judge Brian P. Howell, before whom Smith was pending at the time of these proceedings.

13

same purports to grant injunctive relief." According to the insureds, the December 2010 order did not satisfy the requirements of Rule 65(d), Ala. R. Civ. P., because it allegedly did not "describe in reasonable detail ... the act or acts sought to be restrained." The insureds also argued that "the facts underlying the entry of the Court's order do not satisfy the requirements for the issuance of a preliminary injunction."

BMIC filed a response to the insureds' "Motion to Alter, Amend, or Vacate." BMIC argued that the insureds' motion should be denied because, BMIC argued, the insureds failed to appeal from the December 2010 order pursuant to Rule 4(a)(1)(A), Ala. R. App. P. ("[T]he notice of appeal shall be filed within 14 days (2 weeks) of the date of the entry of the order or judgment appealed from: (A) any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction ....").[6] BMIC also argued that, even if the circuit court could reconsider the December 2010 order, the

_____

[6]BMIC also argued that the insureds' "Motion to Alter, Amend, of Vacate" had not been timely filed pursuant to Rule 59, Ala. R. Civ. P.

14

insureds had failed to show that the Baldwin Circuit Court had exceeded its discretion as to the entry of the order.

On March 15, 2011, the insureds filed an answer to BMIC's complaint and a counterclaim. The counterclaim alleged:

> "60. Each [of the insureds] is either a present or former BMIC policy holder or the successor in interest of a BMIC policy holder.
>
> "61. BMIC issued policies of property and casualty insurance to [the insureds] or their successors covering losses to property.
>
> "62. [The insureds] or their successors each made claims on the corresponding policies issued to them or to their successors.
>
> "63. [The insureds] aver that these claims were not paid in full.
>
> "64. [The insureds] aver further that there was widespread fraud associated with the manner in which their claims were adjusted.
>
> "65. [The insureds] aver that they each disagree or have failed to agree with BMIC regarding amounts of loss for each claim made by them or by their successors."

Based on the foregoing allegations, the insureds asserted claims of breach of contract in their counterclaim, and they requested a judgment "declaring the various rights of the parties under the terms of each policy issued to [an insured]

15

1100872

or his or her or its successor-in-interest," particularly as to certain matters regarding the appraisal process.

On March 18, 2011, the circuit court entered an order denying the insureds' "Motion to Alter, Amend, or Vacate" the December 2010 order. The March 2011 order further stated that the insureds "must present the appropriate information to properly trigger the appraisal process. The Stay shall remain in effect until such information is provided to [BMIC]."

Thereafter, BMIC's counsel sent the insureds' counsel a letter dated April 11, 2011. The letter acknowledged that the insureds' counsel had provided

> "some information with respect to Hugh Bryan, Dora Bryan, Mary Bulger, Mary Hicks, Hattie Jemison, Gloria McCain, Robert Tubbs and LeAnna Williams. I need to have them submit to an Examination Under Oath, as per the express terms of their policies.
>
> "Also, it is imperative that your clients provide me with all of the requested documentation prior to the Examination Under Oath. Again, this information has been requested by way of the consolidated discovery, and must also be provided per the policies at issue.
>
> "Many of the [insureds] are attempting to submit multiple claims to appraisal. Further, the claims span over years and years. As a practical matter, it is very difficult to review the dwelling years after the fact and make any sort of accurate assessment. Having documentation, as has been requested, will certainly allow [BMIC] to determine

16

whether, in fact, it does disagree with any contentions of your clients. In addition, in the event that there is disagreement between [BMIC] and your clients, having this information readily available should permit the appraisers to make a more reasoned and accurate determination as to whether any additional amounts are owed under the claims in question."

On April 15, 2011, the circuit court held a hearing as to various pending motions, and, at the conclusion of the hearing, the court requested that the parties submit briefs as to the issue of appraisal. The parties submitted briefs. BMIC noted in its brief:

"To date, ... only 14 of the 130 [insureds] have provided any information other than the date of loss. Clearly, with respect to the 116 or so [insureds] that have provided nothing to [BMIC] since receiving payment from [BMIC] and thereby reaching an 'agreement' with [BMIC], there has been nothing presented that would tend to establish a disagreement.

"Appraisal has been demanded again with respect to 7 of the [insureds] -- (1) Banks; (2) Bulger; (3) Hicks; (4) Key; (5) Kynard; (6) McNeal; (7) Williams. With respect to each and every one of the seven [insureds], the only thing that has been provided to [BMIC] following the 'agreement' wherein the [insureds] were initially paid is the report of Samantha Green, who has been retained by the [insureds] as their expert."

On April 22, 2011, the circuit court entered an order giving BMIC "ten (10) calendar days to name an appraiser in

17

this case as required by the provisions of the policy" ("the April 2011 order"). Thereafter, BMIC sought clarification as to whether the April 2011 order

> "applies with respect to all of the approximately 130 [insureds], or just the [insureds] that have made the most recent demand for Appraisal. Second, [BMIC] seeks clarification as to whether this Order, in addition to requiring that [BMIC] name its appraiser, also holds that appraisal has been properly invoked."

On April 29, 2011, the circuit court entered an order granting BMIC's motion for clarification. The order states:

> "The Court clarifies its earlier Order to state that the Court finds sufficient evidence of a disagreement as it relates to the fourteen (14) [insureds] that have made the most recent demand for appraisal. The Court finds that they have satisfied the terms of the policy necessary. Other [insureds] may be added to this initial group of [insureds] once they comply with the requirements of the policy to invoke the appraisal provision."

BMIC appealed to this Court pursuant to Rule 4(a)(1)(A), Ala. R. App. P., governing appeals from "any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or modify an injunction." BMIC also filed a motion in the circuit court requesting that that court stay the April 2011 order, pending resolution of BMIC's appeal. The circuit court denied the

motion for a stay. BMIC then filed a motion with this Court asking that we stay the April 2011 order; this Court granted BMIC's motion.

## II. Standard of Review

In the present case, a preliminary injunction was issued in December 2010. Thereafter, the April 2011 order (as clarified) modified the injunction as to 14 of the insureds and, in effect, permanently denied BMIC's claims for injunctive relief as those 14 insureds.[7] The "facts" before the circuit court were undisputed, and no ore tenus evidence was presented at the proceedings. Thus, the ore tenus rule is not applicable, and, as this Court has stated, "where the trial court's ruling rests upon a construction of facts indisputably established, this Court indulges no presumption of correctness in favor of the lower court's ruling." Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer, 454 So. 2d 921, 923-24

---

[7]As to those 14 insureds, the circuit court's order disposes of the central dispute in this case: the timing of the appraisal process in relation to the insureds' fulfillment of their post-loss duties. It requires the parties to engage in the appraisal process before the insureds meet their post-loss duties. Once this happens pursuant to the court's order, it cannot "unhappen." This is not an order that maintains the status quo until relief can be entered or provides any sort of "preliminary" relief; the relief it orders is irreversible.

(Ala. 1984). "[W]hen the facts are undisputed and the '"ruling [is] a reconsideration of a question of law, ... the standard of review is de novo."'" Kappa Sigma Fraternity v. Price-Williams, 40 So. 3d 683, 694 (Ala. 2009)(quoting Bradley v. Town of Argo, 2 So. 3d 819, 824 (Ala. 2008), quoting, in turn, Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487, 328 F.3d 818, 820 (5th Cir.2003)).

Further, as this Court noted in Twin City Fire Insurance Co. v. Alfa Mutual Insurance Co., 817 So. 2d 687, 691-92 (Ala. 2001):

> "A contract of insurance, like other contacts, is governed by the general rules of contracts. ... 'Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.'"

(Quoting Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C., 703 So. 2d 866, 870 (Ala. 1996).)

> "'When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them. Western World Ins. Co. v. City of Tuscumbia, 612 So. 2d 1159 (Ala.

20

1992); <u>St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.</u>, 584 So. 2d 1316 (Ala. 1991). ... Only in cases of genuine ambiguity or inconsistency is it proper to resort to rules of construction. <u>Canal Ins. Co. v. Old Republic Ins. Co.</u>, 718 So. 2d 8 (Ala. 1998). A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. <u>Watkins v. United States Fid. & Guar. Co.</u>, 656 So. 2d 337 (Ala. 1994). ...'

"<u>B.D.B. v. State Farm Mut. Auto. Ins. Co.</u>, 814 So. 2d 877, 879-80 (Ala. Civ. App. 2001)."

<u>State Farm Mut. Auto. Ins. Co. v. Brown</u>, 26 So. 3d 1167, 1169 (Ala. 2009). "'If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy ... by making a new contract for the parties.'" <u>Shrader v. Employers Mut. Cas. Co.</u>, 907 So. 2d 1026, 1034 (Ala. 2005) (quoting <u>St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr.</u>, 595 So. 2d 1375, 1377 (Ala. 1992)). "'[I]nsurance contracts are subject to the same general rules of all written contracts, that is, in case of doubt or uncertainty of the meaning thereof, they are to be interpreted against the party drawing them.'" <u>Upton v. Mississippi Valley Title Ins. Co.</u>, 469 So. 2d 548, 555 (Ala. 1985) (quoting <u>Aetna Life Ins. Co. v. Hare</u>, 47 Ala. App. 478,

486, 256 So. 2d 904, 911 (1972)). In other words, "the rule that ambiguous insurance contracts are to be construed in favor of insureds ... may [not] be permitted to frustrate the parties' expressed intention if such intention can be otherwise ascertained." 43 Am. Jur. 2d Insurance § 299 (2013). See also Tinker v. Continental Ins. Co., 410 A.2d 550, 553-54 (Me. 1980) (discussing, to like effect, the use of the language of the contract as a whole as well as extrinsic evidence in the construction of an insurance agreement).

## III. Analysis

BMIC argues that the April 2011 order requiring it to participate at this time in the appraisal process as to some of the insureds should be reversed: (1) because the insureds at issue have not complied with their post-loss obligations as described in provisions of the insured's insurance policy and (2) because the insureds have not established the precondition to the appraisal process, namely BMIC's 'failure to agree' or 'disagreement' with the insureds as to the value of the loss at issue. As discussed below, the first reason feeds into the second.

1100872

BMIC is correct in its position that the insureds must comply with their post-loss obligations as described in provisions of the respective insured's insurance policy before that insured may invoke the appraisal process. To conclude otherwise would reflect an unreasonable reading of the insurance policies at issue. That is, as to the satisfaction of the insured's post-loss obligations being a precondition to the insured's assertion of the right to an appraisal, the policy is not ambiguous. See Slagle v. Ross, 125 So. 3d 117, 136 (Ala. 2012) (Shaw, J., concurring in the result in part and dissenting in part) (recognizing that language is ambiguous where it "is susceptible to at least two reasonable interpretations"); Inter-Ocean Cas. Co. v. Scruggs, 24 Ala. App. 130, 132, 131 So. 549, 551 (1930) ("[W]hile it is practically everywhere the accepted rule that contracts of insurance must be most strongly construed against the insurer, this rule cannot be pressed to the extent of adopting a construction that is unreasonable. Its applicability is limited to those cases where the language of the policy is ambiguous and is susceptible of two reasonable constructions.").

1100872

Under the express terms of the insurance policies at issue, an appraisal is a step that may be demanded only <u>after</u> an insurance company and an insured come to a state of disagreement over the amount the insurer is to pay. Yet, the insurer has no obligation to pay any amount -- a condition necessary to put the parties in a state of disagreement over that amount -- until the insured meets his or her post-loss obligations. For example, the loss-payment clause in policy CP-00-99, one of the policies at issue here, states:

"f. We will pay for covered loss or damages within 30 days <u>after we receive the sworn statement of loss,</u> if:

"1. <u>You have complied with all of the terms of this policy; and</u>

"2. a. We have reached an agreement with you on the amount of loss; or

"b. An appraisal award has been made."

Policy CP-00-99 further provides:

"3. DUTIES IN THE EVENT OF LOSS OR DAMAGE.

"You must see that the following are done in the event of loss or damage to Covered Property:

"a. Notify the police if a law may have been broken.

24

"b. Give us prompt notice of the loss or damage. Include a description of the property involved.

"c. As soon as possible, <u>give us a description of how, when and where the loss or damage occurred</u>.

"d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

"e. At our request, <u>give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed</u>.

"f. <u>Permit us to inspect the property and records proving the loss or damage.</u> Also permit us to take samples of damaged property for inspection, testing and analysis.

"g. If requested, <u>permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed</u>.

"h. <u>Send us a signed, sworn statement of loss containing the information we</u>

> request to investigate the claim. You
> must do this within 60 days after our
> request. We will supply you with the
> necessary forms.
>
> "i. Cooperate with us in the investigation
> or settlement of the claim."

(Emphasis added.) The other policies contain similar provisions requiring an insured to submit proof of loss and imposing other post-loss obligations, such as providing notice, protecting the property from additional damages, etc., before payment of loss must be made. In other words, the insurance policies clearly condition BMIC's obligation to "pay for covered loss" upon its receipt (1) of a proper statement of loss from the insured, and (2) the insured's compliance with the insured's post-loss obligations described in the specific policy.

The foregoing conclusion is corroborated when one considers the nature of the "duties after loss" at issue. Each of those is a duty that amounts to a precursor to the establishment of a fair and final loss amount. Yet, of the approximately 130 insureds, only 14 have provided even some of the documentation BMIC has requested in its investigation of the claimed losses.

1100872

Even the 14 insureds who have provided some documentation, however, have failed to submit to an examination under oath as BMIC has requested. In addition, the most that any of them has submitted is a report prepared by an appraiser chosen by the insured, or some confirmation of expenses allegedly incurred, as to a loss that is several years old. Although perhaps helpful, the submitted information does not provide BMIC with all the information to which it is entitled under the terms of the insureds' policies, and the insureds responses fall far short of completion of the duties required to trigger BMIC's duty to make an offer to settle the insured's claim for a particular amount in addition to the amount to which the insured apparently had previously agreed. We do not see how the parties can engage one another in a dispute over the amount of loss involved, and go even further to invoke an administrative process for resolving that dispute, unless and until (1) the insureds have provided the required notice of loss, including the basis for each insured's claimed loss and its value, and (2) the insureds have permitted BMIC to investigate and verify the claimed losses, as allowed under the terms of the

27

respective policies. See, e.g., <u>Nationwide Ins. Co. v. Nilsen</u>, 745 So. 2d 264, 267 (Ala. 1998)("An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process. ... [A]n insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims."). Moreover, the failure of the insureds to have complied with their post-loss duties may be particularly problematic in this case. It appears that a significant amount of time passed (two years or more) between all, or most of, the claimed losses and the November 2010 letter from the insureds' counsel, by which BMIC was informed that the insureds "disagreed" with the payments they had received in settlement of the claims the insureds initially had made -- in some cases, years earlier -- and that each of the insureds now was demanding an appraisal.

As BMIC correctly notes in its brief, an insured must comply with his or her post-loss obligations when the insured is making a claim upon the insurer, and meeting those obligations is a precondition to any duty on the part of the

insurer to make a loss payment. See Nilsen, supra; Akpan v. Farmers Ins. Exch., Inc., 961 So. 2d 865, 872 (Ala. Civ. App. 2007). "[T]he obligation to pay or to evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims." United Ins. Co. of America v. Cope, 630 So. 2d 407, 411 (Ala. 1993). "[N]o case from this Court places on an insurance company an obligation to either investigate or pay a claim until the insured has complied with all of the terms of the contract with respect to submitting claims for payment." 630 So. 2d at 412; see also Reeves v. State Farm Fire & Cas. Co., 539 So. 2d 252, 254 (Ala. 1989)("Our cases have consistently held ... that the failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract.").

We also agree with BMIC that, absent the establishment of a duty to pay, there cannot be a genuine "disagreement" between the parties as to the issue of the proper amount of a payment. We find helpful in this regard the decision in

1100872

United States Fidelity & Guaranty Co. v. Romay, 744 So. 2d 467, 471 (Fla. Dist. Ct. App. 1999), in which the court held that the insured must comply with the policy's post-loss obligations before the appraisal clause is triggered. As the Romay court explained, "the disagreement necessary to trigger appraisal cannot be unilateral. ... In other words, by the terms of the contract, it was contemplated that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist." Romay, 744 So. 2d at 469-70; see also Hailey v. Auto-Owners Ins. Co., 181 N.C. App. 677, 687, 640 S.E.2d 849, 855 (2007) ("[T]he unsupported opinion of the insured that the insurer's payment was insufficient does not rise to the level of a disagreement necessary to invoke appraisal. ... [T]o the extent Defendant requested that Plaintiff comply with Plaintiff's post-loss duties prior to invoking appraisal, such compliance was a necessary condition precedent to the invocation of appraisal.").

The Romay court also stated:

"[P]ermitting the insured to compel appraisal without first complying with the policy's post-loss obligations would place the insurer at a considerable disadvantage entering the appraisal

30

> process. The nature of the post-loss obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured."

744 So. 2d at 471 n.4; see also Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 (11th Cir. 2000) (applying Romay and concluding that an "insurance company must be given an opportunity to investigate a supplemental claim before there can be a disagreement between the parties regarding the amount of property loss or damage to effectuate appraisal"); Hailey, supra. In other words, the insured must satisfy his or her post-loss obligations so that the insurer can know whether it does or does not agree with the insured's claim as to the amount of the loss at issue.

## IV. Conclusion

Based on the foregoing, the circuit court erred by ordering BMIC to engage in the appraisal process before the insureds satisfied their respective post-loss obligations and before BMIC had sufficient information on which it could decide whether it disagreed with the respective claims of the insureds. Accordingly, we reverse the April 2011 order of the

1100872

circuit court and remand this matter for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stuart, Bolin, Parker, Shaw, Wise, and Bryan, JJ., concur.

Moore, C.J., dissents.

1100872

MOORE, Chief Justice (dissenting).

I respectfully dissent. As the main opinion notes, Baldwin Mutual Insurance Company ("BMIC") raises two issues on appeal: (1) Whether the insureds may demand and invoke an appraisal in light of the fact that "the insureds ... have not complied with their post-loss obligations as described in provisions of the insured's insurance policy"; and (2) whether the insureds have "established the precondition to the appraisal process, namely BMIC's 'failure to agree' or 'disagreement' with the insureds as to the value of the loss at issue." ___ So. 3d at ___.

As to the first issue, BMIC argues that the insureds may not demand or invoke an appraisal because, BMIC says, they have failed to comply with the post-loss obligations in their insurance policies. BMIC argues that, to properly invoke an appraisal under the various policies, the insureds were required to fulfill certain post-loss obligations. BMIC notes that no Alabama appellate court has addressed the effect of an insured's noncompliance with post-loss obligations on the insured's ability to invoke an appraisal. BMIC relies on cases from other jurisdictions for the proposition that an insured

33

may not demand an appraisal without first complying with the post-loss obligations in the underlying policies. See, e.g., United States Fid. & Gaur. Co. v. Romay, 744 So. 2d 467, 471 (Fla. Dist. Ct. App. 1999)("No reasonable and thoughtful interpretation of the policy could support compelling appraisal without first complying with the post-loss obligations."); Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 (11th Cir. 2000)("[W]e hold that these insureds must comply with the post-loss terms of their respective homeowner's policies, which enables the insurance companies to investigate the insureds' claims and to disagree with the loss amount before the appraisal term becomes effective."); Hailey v. Auto-Owners Ins. Co., 181 N.C. App. 677, 687, 640 S.E.2d 849, 855 (2007)("[T]o the extent Defendant requested that Plaintiff comply with Plaintiff's post-loss duties prior to invoking appraisal, such compliance was a necessary condition precedent to the invocation of appraisal."). According to BMIC, these foreign cases align with Alabama cases holding that an insurer is not obligated to pay an insured until the insured has submitted claims to the insurer pursuant to the terms of the policies. Nationwide Ins. Co. v. Nilsen, 745 So.

1100872

2d 264, 267 (Ala. 1998)("[A]n insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims."). Therefore, BMIC asks this Court to hold that the insureds must satisfy certain post-loss obligations before demanding an appraisal according to their policies.

By their terms, however, the policies do not require the insureds to first satisfy the post-loss obligations before demanding an appraisal. The parties stipulate that the appraisal provisions are roughly the same in each policy:

> "Appraisal. If you and we fail to agree on the values of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to an umpire. A decision agreed to by any two will be binding. Each party will: Pay its chosen appraiser and bear the other expenses of the appraisal and umpire equally."

The section of the policies regarding post-loss obligations is entirely separate from the section of the policies regarding an appraisal. Neither section makes reference to the other.

35

1100872

Nothing in the policies states that post-loss provisions must be satisfied before the insureds may invoke the appraisal provisions. Instead, the policies maintain that either BMIC or the insureds may demand an appraisal if BMIC and the insureds disagree on the value of the property or the amount of loss. Such disagreement could arise at any time. The policies do not specify that the insureds must bring their disagreement to the attention of BMIC only after they have satisfied their post-loss obligations. The plain and unambiguous terms of the policies suggest that the insureds may demand an appraisal whenever they disagree with BMIC regarding the value of the property or the amount of loss. Although BMIC attempts to portray the performance of post-loss obligations as a condition precedent to appraisal, no language in the policies supports that interpretation. Public Bldg. Auth. of Huntsville v. St. Paul Fire & Marine Ins. Co., 80 So. 3d 171, 180 (Ala. 2010)("A court may not make a new contract for the parties or rewrite their contract under the guise of construing it.").

BMIC would have us adopt holdings from other jurisdictions to establish a bright-line rule for all Alabama insurance cases, namely, that an insured must always satisfy

36

post-loss obligations before invoking appraisal provisions in an insurance policy. Such a rule impairs the obligation of existing contracts between insureds and insurers. "General rules of contract law govern an insurance contract." Safeway Ins. Co. of Alabama, Inc. v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005). "The Court must enforce the insurance policy as written if the terms are unambiguous." Id.

Here, the policies are not ambiguous: They allow both BMIC and the insureds to demand an appraisal if the parties disagree about the value of the property or the amount of loss. Although to compel an appraisal in Florida requires a party first to comply with the post-loss provisions in an insurance policy,[8] no such law exists in Alabama. Had the parties wished to be bound by such a rule, they could have included it in their policies. It is unreasonable to hold that, when the insureds purchased their policies from BMIC, they should have expected Florida law to govern their policies. This Court should not read into a contract a provision that is not there. Harbison v. Strickland, 900 So.

---

[8]See, e.g., Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass'n 12 Inc., 54 So. 3d 578, 581-82 (Fla. Dist. Ct. App. 2011).

2d 385, 391 (Ala. 2004)("'"[A] court should ... presume that the parties intended what the terms of the agreement clearly state."'" (quoting other cases)). Nor should this Court add provisions to an insurance policy according to what it perceives to be industry-wide insurance standards and practices as to which the policy is silent. Poole v. Henderson, Black & Green, Inc., 584 So. 2d 485, 487 (Ala. 1991)("'"The general rule of contract law is that, if a written contract exists, the rights of the parties are controlled by that contract, and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms."'"(quoting Rime-Shatten Dev. Co. v. Birmingham Cable Commc'ns, Inc., 569 So. 2d 332, 334 (Ala. 1990), quoting in turn Clark v. Albertville Nursing Home, Inc., 545 So. 2d 9, 11 (Ala. 1989))). Therefore, I would affirm the circuit court's April 2011 order as to the first issue.

As to the second issue, BMIC argues that the insureds have failed to establish a "failure to agree" or a "disagreement" regarding the amount of loss and, therefore, may not demand an appraisal. In particular, BMIC contends that the insureds failed to provide sufficient evidence (e.g.,

estimates from contractors) that the parties disagreed about the amount of loss either before or after BMIC compensated the insureds for the loss. In response, the insureds allege that they established a "disagreement" regarding the amount of loss when, after receiving a check from BMIC to cover their loss, they notified BMIC that the amount of the check was inadequate and that their demand for an appraisal is in accordance with their policies. The point of the appraisal, they contend, is to determine not whether a disagreement between the parties existed, but the amount on which the parties disagree.

BMIC quotes from cases holding that there must be an actual disagreement between the parties regarding the value of the property or the amount of loss in order to effectuate an appraisal.[9] These holdings are in keeping with the policies in this case. BMIC does not argue that it disagrees with the insureds' allegation that BMIC inadequately compensated them for their loss. Rather, BMIC alleges that it does not have enough information to determine whether it disagrees with the insureds regarding the amount of the loss because the insureds have not identified, with sufficient evidence, what they

---

[9]E.g., Jersey Ins. Co. v. Roddam, 256 Ala. 634, 637-38, 56 So. 2d 631, 633-35 (1952); Romay, 744 So. 2d at 469-70.

39

consider the amount of loss to be. If the insureds had complied with the post-loss obligations in the policies, BMIC adds, there might have been sufficient evidence to allow BMIC to determine whether its assessment of the amount of loss differs from the insureds' assessment of the amount of loss.

Accordingly, this Court must determine whether the circuit court erred by denying BMIC's motion for injunctive relief based on the circuit court's finding that 14 of the 130 insureds had proffered enough evidence of the amount of loss to effectuate an appraisal under the policy. BMIC declares that no such evidence exists or that the existing evidence does not support the circuit court's finding that these insureds presented sufficient evidence to invoke the appraisal. However, BMIC does not describe the evidence in the record and before the circuit court or explain how the specific contents of such evidence were inadequate to support the circuit court's order granting the appraisal. This Court has stated that the appellant "has a heavy burden when it seeks a reversal of an order on the ground that the decision is not supported by the evidence." Curtis White Constr. Co. v.

Butts & Billingsley Constr. Co., 473 So. 2d 1040, 1041 (Ala. 1985).

> "It is the function of a trial judge sitting as factfinder to decide facts where conflicts in the evidence exist. Such was the case here. The appellate courts do not sit in judgment of the facts, and review the factfinder's determination of facts only to the extent of determining whether it is sufficiently supported by the evidence, that question being one of law. No error of law exists in this case, and where there is evidence to support the decision reached by the factfinder, we must affirm its judgment."

473 So. 2d at 1041. Because there is ample evidence in the record to support the decision reached by the circuit court, including detailed estimates, drawings, and photographs of the damage at issue, and because BMIC makes no attempt to explain in detail how this evidence does not support the circuit court's findings that the 14 insureds had properly invoked the appraisal provisions in the policies, I would affirm the circuit court's order.

Finally, BMIC claims that, "if an insured has not retained a contractor or repairman, or obtained an estimate of the amount of loss from some other source, it is difficult to understand how an insured could, in fact, disagree with the insurer's determination of the amount of loss." Nevertheless,

the policies by their terms did not require the insured to retain a contractor or a repairperson or to obtain an estimate of the amount of loss from some other source as a condition precedent to invoking the appraisal provisions. "'Courts cannot make contracts for parties, but must give such contracts as are made a reasonable construction and enforce them accordingly.'" Charles H. McCauley Assocs., Inc. v. Snook, 339 So. 2d 1011, 1015 (Ala. 1976)(quoting R.P. Harris, & Co. v. Thomas, 17 Ala. App. 634, 635, 88 So. 51, 52 (1921)). "[W]e know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair." Lilley v. Gonzales, 417 So. 2d 161, 163 (Ala. 1982). "[I]t is the duty of the [C]ourt to enforce [the contract] as written." Kinnon v. Universal Underwriters Ins. Co., 418 So. 2d 887, 888 (Ala. 1982). To hold otherwise is to require consumers purchasing insurance policies to know not only what provisions appear in such policies, but also what judicially created provisions exist for such policies outside the four corners of the policies. Ordinary consumers of insurance policies are not lawyers and should not be expected to search

"caselaw" for provisions applicable to their policies that do not appear in such policies.

For these reasons, I respectfully dissent.